## SAM SMITHWICK V. STATE.

No. 24901. October 4, 1950.
Rehearing Denied December 6, 1950.

*Henry Taylor, Saulsbury, Skelton, Everton & Bowmer,* Temple, and *Henry Wilder,* George West, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The appeal is from a conviction for murder with a life sentence in the penitentiary.

Appellant, in his brief, has stated the facts sufficiently in the following language:

"On the 29th day of July, 1949, Sam Smithwick, Appellant, shot and killed W. H. Mason, in Alice, Jim Wells County, Texas. W. H. Mason was at that time and for about one year prior thereto, a radio commentator over the Alice Broadcasting Company. Sam Smithwick was at that time and prior thereto Deputy Sheriff of Jim Wells County, Texas. W. H. Mason, deceased, had made some statements over the radio with reference to the operation of the Rancho Allegro, a dance hall, which belonged to appellant and was being operated by Betervo Flores. W. H. Mason charged in his radio broadcasts that the Rancho Allegro was a place where immoral people met and prostitutes plied their trade.

"On the 29th day of July, 1949, W. H. Mason, deceased, and Sam Smithwick, appellant, met in a suburban district of the

town of Alice and at which time the appellant shot and killed W. H. Mason.

"On the 9th day of September, 1949, and at a special term of court the Grand Jury of Jim Wells County returned and presented into said court an indictment charging the appellant with the offense of murder.

"On the 12th day of September, 1949, the Judge of said court entered an order changing the venue of said cause from the 79th Judicial District Court of Jim Wells County to the 27th Judicial District Court of Bell County, Texas for trial.

"On the 16th day of January, 1950, this cause came on for trial in the District Court of Bell County, Texas. The defendant entered a plea of 'not guilty.' On the 26th day of January, 1950, the jury returned into court a verdict finding the defendant guilty of murder with malice aforethought and assessed his punishment at confinement in the penitentiary for the term of his natural life."

The first proposition raised in appellant's brief complains of the manner in which the jury commissioners selected the jurors for the term, from whom the special venire was drawn. After the state announced ready for trial, the defendant presented to the court a motion to quash the venire. This motion is based on the contention that the same was not drawn in accordance with the law and should be set aside because the jury commissioners were not furnished with the last assessment roll of said county, by the legal custodian of the same.

In our opinion Article 2107, Vernon's Ann. Texas Statutes, covering the selection of juries, must be looked to in determining the question presented. It reads as follows:

"*Duties of jury commissioners.* The Judge shall instruct said Commissioners as to their duties and designate to them the number of weeks for which they shall select petit jurors, and the number for each week. They shall retire in charge of the sheriff to some suitable room and be kept free from intrusion during their session, and shall not separate until they complete their duties. The clerk shall furnish them with all necessary stationery, and with a list of those appearing from the records of the Court to be exempt or disqualified from serving on the petit jury at each term, and shall also deliver to them the envelope required by law for the placing therein of the names selected, and take their receipt therefor showing whether or not the seal remained unbroken. The last assessment roll of

the county shall be furnished them by the legal custodian of the same. * * * Acts 1943, 48th Leg., p. 175, ch. 100, sec. 1."

The court appointed the jury commissioners under the provisions of Article 2104, Revised Civil Statutes, which prescribes their qualifications: that they must be able to read and write; must be qualified jurors and freeholders in the county; must be from different sections of the country; must have no suit in court.

Article 2107, above quoted, after providing for the qualifying of such men as a jury commission, makes it mandatory that they shall select petit jurors for each week and then directs that they shall retire in charge of the sheriff to some suitable room and be kept free from intrusion during their session. It is the duty of the sheriff, as directed by this article, to give them a suitable room and keep them free from intrusion. It is hardly thinkable, however, that a failure to furnish a convenient and even suitable room to do their best work would nullify their action. Neither would it be a ground for quashing the jury panel if some intrusion had occurred. We might well classify this instruction to the sheriff as directory and not mandatory. It could be enforced only on the demands of the commissioners themselves and the court and could not be relied upon to nullify the results of their labors which they had performed regardless of the difficulties under which they performed them.

It is also stated that they shall not separate until they complete their duties. Whether or not this would nullify their work may depend upon circumstances of the case. The next instruction, then, is to the clerk and we can see no difference in the nature of it and that given to the sheriff. He is directed to furnish all necessary stationery and a list of those appearing from the records of the court to be exempt or disqualified from serving. He is to furnish them other material specified, for the purpose of doing their work and making their report. All of these things which the clerk is to do are stated in such language that the jury commissioners and the judge may require them of the clerk, but we find no penalty attached to the work of the commissioners if they should have to make out their own forms, or a part of them, and do their work under some difficulty arising because the clerk did not do all of the things he is required to do.

The last sentence of the article provides that "The last

assessment roll of the county shall be furnished them by the legal custodian of the same." This is the duty of the tax assessor-collector. The roll may be demanded of him by the commissioners and the judge, in the same manner as the things specified for the sheriff and the clerk to provide. It is evidently the purpose of the legislature that all of these things, including the assessment roll, shall be furnished for the purpose of enabling the commission to do their work most accurately and expeditiously. We find no requirement that the jurors selected shall be taken from names on the assessment roll. The evidence shows, which we must know as a matter of law, that some qualified voters and householders may own no taxable property in the county, in which case their names would not appear on the property assessment rolls. They may, nevertheless, be qualified jurors and such men as the jury commissioners, because of their knowledge of them, would select for jury service. It is likewise true that a great many whose names appear on the property assessment rolls are not qualified jurors.

In the absence of language in the statute so directing, requiring that the commissioners select the jury from "the assessment roll," we will not presume to give such construction to the statute.

In the instant case, it appears that the commissioners were furnished the assessment roll containing the names of qualified voters who had paid their poll tax. It is also true that some of these would not be qualified jurors. The jury commissioners must look beyond this roll in making their selection. While it appears to be mandatory that the sheriff, the clerk, and the assessor-collector do the things specified, when requested by the court or the jury commission, there is no requirement that the jury commission confine themselves to the information thus given them in selecting the jurors for the court. We can conceive of no solid reason, therefore, for the contention that the jury panel which they do select is illegal because they may not have had all of the conveniences and aids provided by law in making the selection.

Appellant has cited as authority for his contention Kincheloe v. State, 146 Tex. Cr. R. 414, 175 S.W. 2d 593, and Tuley v. State, 151 Tex. Cr. R. 71, 204 S.W. 2d 611. A careful study of these cases has revealed to us nothing to sustain appellant's position, in view of our understanding of the article of the statute hereinabove discussed. The question decided in the Kincheloe case and thoroughly discussed in the opinion, is based on im-

proper method of summoning jurors—which did not result in bringing to the court a reasonable number of those summoned. It could not be applied to the facts of this case. The statute on the subject is mandatory in its nature and is designed, not only to insure the party on trial a panel of jurors selected without bias or favor, but a full panel of such jurors to be summoned in the manner prescribed by law. The question decided in the Tuley case is not dissimilar.

Appellant further relies upon Branch's Ann. P.C., Sec. 523, p. 270. It is well settled that appellant does not have the burden of showing specifically that he was injured by the failure of the court to follow the mandatory provisions regulating the drawing of jurors. This is consistent with the citation referred to. Again, in the light of our construction of the article of the civil statute, we see no reason for reversal in the case now before us on the ground of failure to have a property assessment roll in the hands of the jury commission.

The second proposition contended for by appellant would have to be sustained under a different set of facts, but we do not believe the facts in the instant case bring the proposition under the rule.

In drawing the special venire the clerk discarded one name that was drawn from the box and did not enter it on the venire list. The clerk does not have authority to and it has been held to be reversible error for him to discard any names, or to draw fewer names than the number he is required to draw. See Tucker v. State, 119 Tex. Cr. R. 490, 43 S.W. 2d 103.

The facts of the instant case justify the conclusion that the clerk drew the name of C. E. Lloyd, whose post office address is Belton, Texas, and discarded the same for the reason that the name of the same individual had already been drawn. He then proceeded to draw the full number for the special venire as directed. If he had not discarded this name when he drew the ticket of the same individual for the second time, his venire would have contained only 249 names instead of 250, which would have given appellant a just right of complaint.

It may be argued that the evidence does not show that the two names of C. E. Lloyd, Belton, Texas, are of the same person, but the evidence favoring it is overwhelming and uncontradicted. The trial court, it must be construed, so found and we are not in position to say that he was in error. The clerk stated, "The same

name was already on the venire list." Under cross-examination he said: "I know C. E. Lloyd, of Belton, Texas. I have known him for many years. I do not know of any other C. E. Lloyd in Belton, Texas. The name of C. E. Lloyd that I put back in the box was a duplication of the name that I had already drawn. I am sure that the jury commission had inadvertently placed his name on two different lists, and that was the reason that I drew his name twice."

Mr. C. E. Lloyd was called as a witness and he testified:

"My name is C. E. Lloyd, and I live on RFD out of Belton. My address is Route 3, Belton, Texas. I have lived in Precinct No. 1 at Belton for fifty-one years, I guess. I have lived here all of my life. I have lived in Bell County all of my life.

"As far as I know there is not any other C. E. Lloyd living in or around Belton, Texas. I have never known of another C. E. Lloyd during my lifetime. I have always gotten my mail in the name of C. E. Lloyd, Belton, Texas. I have never at any time gotten my mail mixed up with any other C. E. Lloyd. I have served on the Production and Marketing Administration of the Farm Administration for Bell County for a good many years. In serving in that capacity it carries through my hands the names of many hundreds of the citizens of Bell County. I would estimate that about six thousand names a year go through in that manner. I have never at any time found or known of another C. E. Lloyd during that time."

This evidence could have been refuted by a showing that there is another person by the same name, but none is found in the record. The poll list and the property assessment roll were both in the court house and doubtless would have been availed of to refute this evidence if another person by the name of C. E. Lloyd appeared thereon.

Appellant's third proposition complains that the commissioners were not furnished a list of those appearing from the records of the court to be exempt or disqualified from serving on the petit jury. It appears from Bill of Exception No. 5—A that counsel wanted the district clerk to furnish the jury commission a list showing the names of all civil officers of the state and of the United States; a list showing the names of all persons over sixty years of age; a list of the ministers of the gospel; a list of all physicians and attorneys engaged in actual practice; a list of all publishers of newspapers, teachers, druggists, under-

takers, telegraph operators, railroad station agents, ferry men and millers, together with numerous others specified.

It will be sufficient to say that the discussion of the construction of the statute in connection with the preceding proposition sustains our conclusion that no error was shown.

The fourth proposition complains of the admission of certain evidence, elicited from the defendant's witness on cross-examination, with reference to a fight between deceased and two deputy sheriffs other than appellant. Bill of Exception No. 7, making this complaint, is quite involved. It contains a number of exhibits which had been introduced in evidence by appellant, consisting of copies of the broadcasts by deceased which appellant claims provoked him and caused the difficulty resulting in the tragedy. The objection to the question was that it was wholly immaterial and irrelevant and did not show the truth of any statements made in the broadcasts; and further, because the witness was not asked to give the time, place or occasion, as to when the fight took place. The objection was made "* * * until that is also established by the state, * * *."

The bill continues:

"Thereafter and on re-cross examination by the State the following Exhibit was offered: 'Exhibit S-7, Offered by the State.

" 'Since my broadcast yesterday about the Rancho Allegro I have talked to several people about the deal . . . and find sentiment pretty well the same as mine.

" 'No possible good can come out of a situation where young girls are exposed to drunken men . . . there can be no excuse for trafficking in the souls of kids.'

"Defendant here and now tenders this his bill of exception No. 7 and asks that the same be allowed, signed, and filed as a part of the record in this cause."

We confess our inability to determine what complaint appellant is bringing to the court.

We fail to find merit in appellant's fifth proposition, based on the complaints raised in his Bill of Exception No. 8. The bill is fatally defective in that it is duplicitous, indefinite and uncertain as to the question raised. Apparently it is offered in rebuttal of evidence given by appellant in his own behalf.

Appellant's sixth proposition relates to his Bill of Exception No. 6-D, complaining of the cross-examination of character witnesses by the district attorney. Questions were asked which, in the form appearing in the record, inquired about the knowledge which the witness had of acts and conduct of appellant, as distinguished from the permissible question as to whether or not they had heard of these things. The qualification which the court gives to the bill shows that no objections were made to the questions at the time they were propounded. Later complaint was made of this evidence in the form of objections to the court's charge because the court declined to instruct the jury not to consider the evidence. The objection cannot be raised in that manner. 4th Texas Jurisprudence, p. 306, sec. 213. The bill is duplicitous because it complains of questions asked six different witnesses.

We think the action of the court complained of in appellant's 7th and 8th propositions, germane to Bill of Exception No. 8, is a matter within the discretion of the trial court.

We are of the opinion that the facts of the case are insufficient to support the proposition taken by the appellant in the 12th, 13th, 14th and 16th propositions of his brief, germane to his Bills of Exception Numbers 6 and 8.

Appellant's 18th proposition relates to his Bill of Exception No. 11. Willie Chappa, a witness for the state, testified that in his opinion certain girls frequenting the dance hall, which deceased had charged belonged to appellant, were prostitutes. The witness had testified that he was an officer and that he knew some of the women named. He was then asked if he knew whether or not they were prostitutes. (The bill shows that defendant had testified that he saw some of these parties at the dance hall, Rancho Allegro.) Objection was made that the question called for an opinion and conclusion of the witness. He was an officer and said he knew some of the girls and, as an officer, he believed a part of them to be prostitutes. The objection goes to the weight of the evidence.

Appellant put in evidence a number of exhibits containing manuscript copies of the broadcasts by Mason, the deceased, which made serious charges against appellant, who was then serving as a deputy sheriff. Testifying in his own behalf appellant denied the truth of these charges and claimed that they provoked the shooting. Having made an issue of this, the state

was then permitted to offer proof as to the truth of Mason's charges. We think the court's rulings were proper.

Other questions raised are dependent upon bills of exception which are not prepared according to statutory requirement. Furthermore, we do not believe that they show error.

The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again presents the proposition that because the officers drawing the special venire out of a list of 480 men selected by the jury commission having drawn the name of C. E. Lloyd, Belton, Texas, afterwards again drew such name and therefore discarded such name thus drawn the second time and drew a further name, eventually presenting appellant with the full 250 names as a venire from which to select a jury herein, —the name of C. E. Lloyd being on such list but once.

We are cited to the case of Gunn v. State, 90 Tex. Cr. R. 209, 234 S.W. 399, in which case it seems that the persons drawing a special venire to try the accused, drew many names of persons who had valid excuses from serving on such jury. Some of the jurors there drawn seemed to be absent from the county and some were witnesses; and for various reasons, the trial judge, who was present at such drawing, instructed the clerk not to enter such names on the venire list and discarded the same. In other words, the judge excused these prospective jurors without a hearing and exercised his discretion at an improper time.

In the present instance, the clerk having once drawn the name of Mr. Lloyd, did not do a useless thing by placing his name twice upon the venire list. The law does not demand that a useless thing be done. Lloyd could serve if he did so, but once as a juror, and to charge his name twice on the venire as a possible juror would have resulted in appellant being offered 249 jurors instead of 250. For purposes of argument, suppose Lloyd's name had been drawn five times or ten times, he could only serve but once, if at all, and his inclusion on the list these many times would have resulted in appellant being deprived of his right to have 250 jurors presented on his venire. We are of the opinion that no error is shown herein in such matter.

Bill No. 7 relates to a statement made by a defense witness, A. C. Lloyd, Jr., upon cross-examination by the state, relative to a fight between two of Sheriff's Sain's deputies and the deceased in the sheriff's presence; and in such bill is set forth the deceased's broadcast relative to certain conditions in the city of Alice, Texas, as follows:

"But the real answer is in the county. The hot potato is strictly in Hubert Sain's lap. Here is a chance for all you church people to make your influence felt. . . . Form a committee . . . send people out to these places and see for yourselves what is happening . . . . you don't have to take my word . . . . I have tried to be accurate . . . . but this thing is so serious you all should be satisfied."

\* \* \* \*

"Thereafter and on cross examination the State's attorney asked said witness this question:

" 'That Hubert Sain stood in the presence of Charlie Brown, deputy sheriff, that Charlie Brown and another deputy, Brand, whipped Mr. Mason with his fists and then he did tear his pants off, that is correct, isn't it?'

"To which the witness answered, 'As far as I know, I understand it to be true.'

"To which question, at that time the same was asked and before it was answered the defendant then and there objected for the reasons that the testimony of said witness was wholly immaterial and irrelevant and did not show the truth of any statements made in the broadcasts. And because even though this witness knows the time, the place, and the occasion, it is not fixed by the broadcasts as to when he says Hubert Sain sent a deputy to tear his pants off and until that is so fixed by the broadcast, the time and the place and the occasion, and the nature of the offense, until that is also established by the State, then we object to the State proving the truth of it.

"That the court overruled each and all of the defendant's objections to said questions and answers at the time same were offered and permitted the witness to testify and answer said question as above set out . . . . And the court permitted all of said evidence to go before the jury as above stated and defendant then and there in open court at said time excepted to the action and ruling of the court for each and all of the reasons above given."

We are not impressed with its seriousness even if any error

is shown in said bill. It is evident that the deceased was denouncing the conduct of Smithwick, as well as Sain, the sheriff, and the fact that a broadcast relative to such fight had been heard, is evidenced by the objection to this testimony, one of these objections being that it was not fixed by the broadcast as to when the deceased said that "Hubert Sain sent a deputy to tear his pants off and until that is so fixed by the broadcast, the time and place and the occasion, and the nature of the offense, until that is also established by the State, then we object to the State proving the truth of it." The answer of the witness to said question was objected to as immaterial and irrelevant and did not show the truth of any statements made in the broadcast.

This assault barely referred to by Lloyd was, of course, made, if at all, before Mason's death, and might have had some relevancy in showing a motive upon appellant's part to at least run Mason out of town as is reflected in each of his broadcasts. Surely it might have been one of the circumstances utilized for the purpose of stopping these broadcasts relative to the conditions found in this Rancho Allegro which belonged to this officer of the law, a deputy under sheriff Sain, into whose lap the broadcast had said these conditions rested.

We think this difficult case has been properly tried, and that the rights of appellant have been fully protected by his astute attorneys.

So believing, the motion will be overruled.