**Clarence Wesley EVANS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41226.**

Court of Criminal Appeals of Texas.

July 24, 1968.

Toby Goldsmith, Tim C. Curry, Fort Worth, for appellant.

Frank Coffey, Dist. Atty., Roland H. Hill, Jr., Grady Hight and R. W. Crampton, Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

BELCHER, Judge.

The offense is rape; the punishment, death.

The prior opinions are withdrawn.

The disposition of this cause makes it necessary to consider only the appellant's contention that the trial court erred in refusing a court reporter when requested, to take the voir dire examination of the jury panel.

Art. 40.09(4) C.C.P., provides in part:

"At the request of either party the court reporter shall take shorthand notes of all trial proceedings, including voir dire examination, * * *."

The determination of whether the requirements were complied with during the selec-

---

tion of a trial jury must be reviewed and appraised in accordance with the appellate record and the applicable statutes.

It was stipulated at the hearing on the second amended motion for new trial that 44 of 98 prospective jurors were challenged for cause by the state and excused by the court by virtue of their conscientious scruples against the infliction of the death penalty as punishment for crime in a proper case.

In support of the allegations in his second amended motion for a new trial that his requests for a court reporter to take the voir dire of the veniremen was denied, defense counsel, Toby Goldsmith, testified in part as follows:

"A The first juror—according to my notes—and I remember of her as being a lady, but my notes show that she was Mrs. Ruby Johnson . . . Mrs. Johnson disqualified, according to The Court's ruling, on the death penalty.. In other words, she was challenged for cause by The State, and excused by The Court.. Immediately after the State challenged Mrs. Ruby Johnson for cause, I requested of The Court, that he allow me to ask certain questions pertaining to her qualifications. The Court refused this request.. I then asked for a Court Reporter to take down the rulings of The Court.. I was instructed by The Court that I was not entitled to a Court Reporter; that if I disagreed with the rulings of The Court, to get me some by-standers' Bills... Mrs. Ruby Johnson was then excused on the challenge for cause by The Court, and there was no Court Reporter reporting notes or recordings of the testimony of Mrs. Ruby Johnson, as pertaining to her qualifications, on voir dire."

The witness, Goldsmith, further testified that the court reporter took the voir dire of the first or second jurors, and maybe

another, but recalls that the reporter was not in the courtroom after that; that he was allowed to examine some of the jurors challenged by the state but his requests to examine others were refused; and that after his examination of one or two jurors his further requests for a court reporter were denied, and that his requests were never withdrawn, but were renewed.

Tim Curry, also of counsel for the appellant, testified in part as follows:

"A  *  *  *  Some time, directly after the beginning of the examination, Mr. Goldsmith requested a Court Reporter, to take down the voir dire examination.. At that time, The Court denied his request; and, after some discussion, The Court told him, or told all of us, that we could use By-Standers' Bills, to perfect the record; and that we were not entitled to a Court Reporter, on the voir dire examination.. As to one of the jurors, the Court Reporter did come in and take his examination down.. And after that juror— which was apparently the second juror—and for reasons which I don't know, the Court Reporter was not there at any other time . . . I never agreed to waive the Court Reporter.. I never agreed that the Court Reporter could, at any time, leave the court room, during the voir dire examination.. And to my knowledge, I never heard any one connected with the defense of this case, waive, or agree, that the Court Reporter should not be present..

"I remember, during the course of the voir dire examination, Mr. Goldsmith made several requests for a Court Reporter, in order to take the voir dire examination.. At one time, he made the request for a Court Reporter, in order to get into the record that the Court was denying him a Court Reporter..

"And in answer to each of the requests, to my knowledge, we were always denied

a Court Reporter by the Court.. That's the substance of my recollection."

Gary Cole, another counsel for the appellant, testified to substantially the same facts as the witnesses, Goldsmith and Curry.

Grady Hight, the assistant district attorney, who tried this case, testified in part as follows:

"In the first particular juror here, Mrs. Ruby Johnson; she was a colored lady; these questions were asked. She disqualified; that is, she answered that she did have conscientious scruples and could not vote for the death penalty, no matter how serious the offense.

\*     \*     \*     \*     \*     \*

"In the case of Mrs. Johnson, The Court picked up her jury card from the stack in front of him, turned to her, and the words that he said were: 'Mrs. Johnson, you are excused.. Return to the Central Jury Room.. Do not discuss what has happened here in this court room with any one.'.. That may not be word for word, but that is essentially what he told her.

"It was not until that time that the Defendant through his Counsel, made the request for further voir dire examination.. The Court instructed the Counsel that he had already sustained the challenge to the juror.. Whereupon the Counsel requested permission to call the Court Reporter to make a formal Bill of Exception.. Again, as is the ordinary custom of the court, The Court instructed Counsel to make his formal Bill of Exception at a later time so as not to interrupt the proceedings of the court room.

\*     \*     \*     \*     \*     \*

"After some further discussion, I believe The Court did inform Counsel that if he did not wish to make a formal Bill of Exception, that he could prepare a by-stander's Bill, which would take it up ... At that time, I spoke to The Court—I don't recall the exact words—but I stated that if Counsel would call for

a Court Reporter for the next juror, The State would have no objection.

\*     \*     \*     \*     \*     \*

"At the conclusion of that juror's (the second juror) testimony, The Court told the Court Reporter to return to his office, and that he would call him again if and when he was needed.. I did not hear the Defendant, nor any of his counsel, make any objection to this.. And from that time on, at the beginning of each prospective juror's testimony, there was no objection made because a Reporter was not present and taking down the questions and answers.

"The Court continued to follow the policy, from that time on, that whenever a request for further vior dire examination was made, before The Court had ruled and excused the juror, the Defense Counsel were permitted to so examine the jurors.. And this happened in numerous instances.. If the request for further voir dire examination, did not come until after The Court had made his ruling, The Court did not permit further examination. .

"On two or three other instances, the Reporter was requested for the purpose of perfecting the formal Bill of Exception.. And in each instance, The Court informed Defense Counsel to perfect their Bill of Exception at a later time, so as not to interfere with the selection of the Jury."

Lee S. Henry, the court reporter, testified in part as follows:

"Q (By Mr. Hight) Mr. Henry, at the conclusion of that witness' (2nd) testimony, did you do anything in preparation for the taking of the testimony of Juror No. 3, Mrs. John Taylor?

"A Yes sir, I wrote her name down in my note book, and put down that she was the next witness on the list, as called by The Court.

"Q What was said in the court room, at that time?

"A At that time, Mr. Hight, I was excused; and I do not have anything down in my *bote* book, nor is there any'thing on the machine; but I have a recollection of what it was.

"Q What was that?

"A The Court, in substance, said to me, or said to every one: 'I don't think we need M*e*. Henry any further; he will be here if we need him.'

"Q Do you recall, at that time, any of the Defense Counsel making a statement: 'That's all right, if we can get him *him,* if we want him.'?

"A I recall Mr. Goldsmith saying something to that effect; not those exact words.. But something like 'just so we can get him if we need him' or something like that. .

\*   \*   \*   \*   \*   \*

*CROSS-EXAMINATION BY MR. GOLDSMITH:*

"Q Mr. Henry, did you say that in your notes, after you wrote down the name of Juror No. 3, that is as far as they go?

"A Yes sir.

"Q And is it your testimony, based on your recollection only, that it was at that time that The Court told you words to the effect that you would be excused from taking down any more of the testimony of the jurors; is that correct?

"A Well, Mr. Goldsmith, he didn't say that exactly.

"Q Whatever he said there, you don't have that in your notes; is that correct?

"A I do not; but I was excused.."

 The trial judge having refused the requests of the appellant to direct the court reporter take the voir dire examination of the veniremen as shown which would necessarily include his rulings in passing on their qualifications, deprived the appellant of a transcription of the testimony and the court's ruling thereon and constitutes a denial of the right of review of his case by this court which is guaranteed to him by law. Williams v. State, 418 S.W.2d 837.

In the absence of the transcription of the voir dire of the jury panel, we will not here review the holding of the United States Supreme Court in Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, which involved the basic attitudes of the venire panel toward the death penalty.

From the record, it is concluded that the ends of right and justice will best be served and maintained by according to the appellant, another trial.

The judgment of affirmance is set aside, appellant's motion for rehearing is granted, and the judgment of the trial court is reversed and the cause is remanded.