Susie **BRADLEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 42313.

Court of Criminal Appeals of Texas.

Nov. 19, 1969.

Rehearing Denied Jan. 21, 1970.

**848**

Sam Wilson, Houston, for appellant.

Sam Cleveland, Stephenville, and Jim Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is murder with malice; the punishment, ten (10) years.

The indictment charges the appellant with the murder of her husband, James Bradley.

■ Appellant initially complains of the trial court's refusal to grant her first motion for continuance based on the unavoidable absence of co-counsel.

The indictment was presented on October 5, 1967, and the record reflects that at least by October 23, 1967, appellant was represented by counsel of her own choice, Mr. Sam Wilson of Houston, Texas.

In a letter dated January 30, 1968, State Senator Tom Creighton requested the District Clerk to note his "appearance as attorney of record and co-counsel" in said cause.

On February 2, 1968, appellant's first motion for continuance was filed and overruled. If evidence was adduced in connection with said motion it is not in the record before us. The motion was based on the prior commitment of Senator Creighton to attend a Senate Legislative Committee hearing on February 12, the date the case was set for trial.

It should be here noted that this was not a mandatory legislative continuance as required by Article 2168a, Vernon's Ann.Civ. St.[1]

On the day the trial commenced (February 12) a second motion for continuance on the same ground was filed and overruled, and the trial proceeded with the appellant being represented by Mr. Wilson and Mr. David Cleveland of Mineral Wells.

---

1. The Legislature was not in session nor were the other time provisions of such statute applicable and no affidavit as required by such statute was filed.

The record reflects that appellant was ably represented by counsel of her own choice and that her rights were fully and fairly protected. The court did not err in overruling both motions for continuance. Carrell v. State, 84 Tex.Cr.R. 554, 209 S.W. 158; Sapp v. State, 87 Tex.Cr.R. 606, 223 S.W. 459; Caraway v. State, 98 Tex.Cr.R. 119, 263 S.W. 1063; Kerr v. State, 134 Tex.Cr.R. 368, 115 S.W.2d 672; Lopez v. State, 152 Tex.Cr.R. 562, 216 S.W.2d 183; 12 Tex.Jur.2d, Continuance, Sec. 27, p. 579. See also McKnight v. State, Tex.Cr.App., 432 S.W.2d 69.

Ground of error #1 is overruled.

█ Next, appellant contends the court erred in refusing to quash "the venire from which the jury was chosen." It is her contention that the jury commissioners sought to assure a "responsible" jury by systematically excluding persons over 65 years of age and women with children under 18 years of age, and that the selection was made only from a list of registered voters in violation of the requirement of Article 2110, V.A.C.S., that prospective jurors selected be "citizens of the different portions of the county, liable to serve as jurors * * *." Appellant specifically argues that she is a female with children under the age of sixteen years and therefore a member of the class systematically excluded.

The record does not support appellant's contention. Only one of the jury commissioners testified and he related the commissioners were instructed as to the qualification of jurors; that they selected responsible people from different portions of the county, from "all walk of life," both men and women from all races, and had no knowledge whether the persons selected would be called as jurors in any particular case. He did testify that he and another commissioner during the selection would inquire of each other whether there was serious illness in the family or if the "lady" had "children under eighteen." [2] There was no showing, however, that such persons were then excluded. Neither a list of the prospective jurors nor all of the voir dire examination is in the record before us. We are in no position to pass upon appellant's claim.

We further note that Article 33.09, Vernon's Ann.C.C.P., provides that jury panels are to be selected and summoned in the same manner as in civil cases unless otherwise provided in the Code of Criminal Procedure. Article 2107, V.A.C.S., relating to the duty of jury commissioners, provides that the clerk shall furnish such commissioners with a list of those who are "exempt or disqualified from serving on the petit jury at each term."

It is not altogether clear from the record whether the jury commissioners had more than a list of registered voters before them at the time of the selection in question, but in Smithwick v. State, 155 Tex. Cr.R. 292, 234 S.W.2d 237, it was held that the failure to furnish the last property assessment roll of the county to such commissioners did not constitute a ground for quashing special venire drawn for a murder case, since commissioners were not required to select jurors from the assessment roll. See Article 2107, supra.

Ground of error #2 is overruled.

█ In her third ground of error appellant complains of the trial court's refusal to limit the exclusion of jurors who had conscientious scruples against the death penalty.

If it be appellant's contention that there was a Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, violation, we first observe that there is not a complete record of the voir dire examination before us. Evans v. State, Tex.Cr.App., 430 S.W.2d 502. Secondly, we note that

2. Article 2135(7), V.A.C.S., provides that "all females who have legal custody of a child or children under the age of six teen (16) years" are not liable to jury service.

in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, the Supreme Court said:

"Our decision in Witherspoon does not govern the present case, because the jury recommended a sentence of life imprisonment."

Such holding would be applicable here since a 10 year sentence, not the death penalty, was imposed.

If, however, it be appellant's contention that the jury selection methods utilized resulted in a prosecution prone jury to decide the question of guilt, then attention is called to Parks v. State, Tex.Cr.App., 437 S.W.2d 554, which, relying upon Bumper and Witherspoon, was decided contrary to appellant's contention. Appellant certainly has offered no more data than available in those cases to demonstrate that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt.

Ground of error #3 is overruled.

We shall delay a discussion of appellant's grounds of error #4, #5 and #6 at this point to avoid unduly lengthening this opinion.

■ Donald McGaha, 24, testified that he met the appellant in a lounge in Montgomery, Alabama in May, 1967, began dating her, became intimate with her, and lived at her house for some 3 and ½ months; that during such time appellant referred to her husband, the deceased, an Army Sergeant stationed in Vietnam, with vile names calling him "the sorriest person on earth"; that she expressed an intention to seek a divorce upon her husband's return; that she expressed a wish that he would be killed in Vietnam or that his homebound plane would fall and crash.

McGaha related that after a trip to Florida together, he and appellant discussed marriage; that she in effect told him he had everything she wanted in a man except money; that the deceased had $30,000

in life insurance which could be used to pay off all debts, buy a home, and they could then live off his (McGaha's) salary as a fireman; that they discussed a hired assassin, but then this was abandoned due to the lack of money and knowledge of an available assassin; that by the time the deceased returned it was known he would be stationed at Fort Wolters, Texas.

McGaha further related that upon the deceased's return the appellant asked him to kill her husband; that the deceased would not agree to a divorce and was going to kill her and her children, that he (McGaha) agreed to do so but was unable to bring himself to kill when he had his first opportunity in Montgomery.

It was then decided, according to McGaha, that the killing would take place after appellant and her husband arrived in Texas that she would send a map of Mineral Wells and their address; that she would unload the pistol they had, would open a window, dump her purse out and break a porch light to give the indication of a burglary.

McGaha further testified he received a letter from appellant after her departure (which had been mailed to a Beth Grimes in Montgomery) and that enclosed in such letter was a map of Mineral Wells and the location of the house rented by the appellant and the deceased clearly marked thereon; that on September 20, 1967, shortly before noon he received a long distance call from appellant in Mineral Wells placed from a pay telephone informing him that she and the deceased were "moving in" and inquiring if he was still "going to do it."

McGaha related he gave her an affirmative answer and stated it would be the following night around midnight.

Without describing all the details McGaha testified he drove from Alabama to Mineral Wells and around 3:30 a. m. on September 22, 1967, approached the front door of the house in question for the sec-

ond time that morning, called the deceased's name, knocked at the door, and yelled "Telegram for Mr. Bradley"; that the deceased came to the door with a pistol; that he shot the deceased, fell off the porch, fired a second time, fled to his automobile and returned to Alabama.

To corroborate McGaha's testimony the State offered Patricia Hamilton, a nearby neighbor, who testified that after she heard loud talking, shots being fired and a car being driven off she arose from her bed and saw a woman in the Bradley house raising or lowering or "doing something" to a window.

Other evidence shows that when the police arrived the window in question was open and unlatched; that the contents of appellant's purse were scattered on a divan and appellant stated $40 or $50 was missing therefrom, but she did not know whether the deceased or someone else had taken the money; that her husband had been in a fight in a beer joint earlier that night; that she had the day before unloaded their pistol without knowledge of her husband, had retrieved it from her husband's hand after the shooting and returned it to its place under the mattress.

Mrs. McMurry, another neighbor, testified that after the shooting the appellant appeared very calm and refused to accompany her badly wounded husband to the hospital, even though she (Mrs. McMurry) offered to keep the children.

The record reflects that the deceased expired on September 23, 1967, as a result of gunshot wounds following extensive surgery attempting to save his life.

In further corroboration of McGaha it was shown that the telephone company records reflected a call from a pay telephone in Mineral Wells to McGaha's telephone number in Montgomery, Alabama between 11:30 a. m. and 12 noon on September 20, 1967. McGaha subsequently testified he knew no one in Mineral Wells save the appellant.

A letter to Beth Grimes in Montgomery from the appellant in Texas was introduced which reflected appellant's hope to be back in Alabama in "a couple of more weeks" and requested Beth to give "my Baby" his letter. The deceased's mother testified she had given appellant a map of Mineral Wells similar to the one McGaha testified was enclosed in the letter he received from appellant and mailed to Beth Grimes; that the rented house was clearly marked on such map. David Coker, who shared an apartment with McGaha at the time, testified he saw McGaha looking at a map or piece of paper with a yellowish tint and folded like a map and that upon his inquiry if it was a newspaper McGaha replied in the negative and "began to fold it up." McGaha testified Coker had seen him with the map.

McGaha's mother, who knew the relationship between her son and the appellant, testified the appellant called her on the day she departed for Texas and informed her she (the appellant) would be back in Alabama in three or four weeks.

It was further shown that during the preliminary investigations the appellant denied having any boyfriends during her husband's stay in Vietnam and specifically denied knowing a "Donald" who had been employed as a fireman in Montgomery.

Testifying in her own behalf, the 30 year old appellant admitted she had been intimate with McGaha but contended the affair was at an end when the deceased came home. She denied any complicity in a conspiracy to kill her husband. She claimed she had unloaded her pistol on the night in question for the safety of her children; that if anyone was seen at the window after the shooting it must have been her four year old daughter; that she denied to the investigating officers she knew Donald McGaha so it would not be revealed to her critically wounded husband; that she had referred to McGaha as "my Baby" in a letter to Beth Grimes since he had been such a "cry baby" about her departure for Texas; that she and

her husband had planned to return to Alabama in a few weeks to purchase a car and check on a job for her husband after his retirement from the Army.

The court in its charge instructed the jury on the law of principals and charged that McGaha was an accomplice witness as a matter of law, and that his testimony must be corroborated. See Article 38.14, V.A.C.C.P.

We find the evidence clearly sufficient to support the jury's verdict.

Under the circumstances described, we reject appellant's claim that appellant could not have been a principal to the acts of McGaha. See Articles 65 to 69, inclusive, Vernon's Ann.P.C. See also "The Law of Principals, Accomplices and Accessories" by Morrison and Blackburn, Vol. I, V.A.P.C., pp. xiii to xxviii.

Ground of error #7 is overruled.

Further, under the facts described above, we find no merit in appellant's contention that she was convicted on the uncorroborated testimony of an accomplice witness. See Article 38.14, supra. Clearly the test discussed in Edwards v. State, Tex.Cr. App., 427 S.W.2d 629, was met.

Ground of error #8 is overruled.

■ The testimony of McGaha, even though an accomplice witness as a matter of law, which made out a complete case against the appellant, was sufficient to remove any necessity to charge on circumstantial evidence. See Gutierrez v. State, Tex.Cr.App., 423 S.W.2d 593; White v. State, Tex.Cr.App., 385 S.W.2d 397; Steen v. State, 131 Tex.Cr.R. 532, 100 S.W.2d 109; Washington v. State, Tex. Cr.App., 434 S.W.2d 138; Byrd v. State, Tex.Cr.App., 435 S.W.2d 508; 12A Tex. Digest Criminal Law ☞814(17). See 5 Branch's Ann.P.C., 2nd ed., Sec. 2667, p. 113; 31 Tex.Jur.2d, Instructions, Sec. 123, p. 688; 4 Branch's Ann.P.C., 2nd ed., Sec. 2555, pp. 888–889.

Ground of error #9 is overruled.

■ We cannot agree that, under the facts presented, the court erred in failing to charge on murder without malice aforethought. "The failure to instruct the jury on the question of murder without malice is not error unless there is some testimony which raises the issue and therefore calls for such a charge." 4 Branch's Ann. P.C., 2nd ed., Sec. 2302, p. 658.

The brief testimony to which appellant calls our attention relating to McGaha's fear and second thoughts after he had knocked at the door just prior to the shooting does not raise the issue.

Ground of error #10 is overruled.

Appellant's unbriefed ground of error #11 that the court erred in failing to grant the motion for instructed verdict is patently without merit and is overruled.

■ Returning to grounds of error #4, #5 and #6, appellant contends the court erred in admitting testimony concerning her "alleged" relationship with a Harry Watson, as well as a statement made by Watson out of her presence and in failing to give limiting instructions as to testimony concerning an altercation between McGaha and Watson.

McGaha testified that he had acquired the murder weapon, a .38 cal. revolver, right after Harry Watson, who knew the appellant, had come to her house in Montgomery and shot at him. He further testified that when he later expressed doubt that he could "get away" with the murder planned, appellant advised, "Well, do like Harry Watson done you." This testimony was received without objection.

In order to show what method the appellant had reference to, the State was permitted, over objection, to elicit from McGaha that after his affair with the appellant had commenced, he and the appellant saw Harry Watson in a lounge one night; that Watson telephoned appellant at her house in the following early morn-

ing hours and then called back to talk to McGaha; that as McGaha dressed to go meet Watson, he heard a loud knock at the front door of appellant's house and when the door was opened Watson stuck a rifle in McGaha's face and said, "I'm man enough to stomp her old man when he gets back and you damn sure ain't going to stand in the way; I'll kill you right now"; that a shot was fired, knocking a hole in the wall.

It was shown that such incident took place in the presence and hearing of the appellant.

It appears to be appellant's specific contention that such testimony imputed immoral conduct to her without being material to any issue in the case, since it inferred appellant dated or "went with" Watson while her husband was overseas.

If the testimony left such an inference it became immaterial when there was elicited from McGaha on cross-examination that his relationship with the appellant had not always been "rosey." Thereafter, the record reflects the following:

"Q. Why did you break up?

"A. Well, she was going out with Harry Watson at nights when I was working at the fire department and going with me the nights I was off.

"Q. And that made you pretty green with jealousy, didn't it?

"A. Yes. We talked about it. * *"

Appellant's reliance upon Chatterfield v. State, Tex.Cr.App., 436 S.W.2d 146, is misplaced. There the complained of testimony was not pertinent to any issue raised at the trial and showed the conduct of the defendant which was wholly disassociated with the offense for which he was being tried. Such is not the case at bar, which involves a conspiracy to commit murder where the conduct shown is that of a third person, not the defendant, and the incident is relevant to show that the killing charged occurs in a similar manner as that advised and encouraged by the appellant.

We find no special requested charge or written objection to the court's charge for the failure of the court to give limiting instructions as to the altercation between McGaha and Watson. See Articles 36.14 and 36.15, V.A.C.C.P. Nothing is presented for review.

Grounds of error #4, #5 and #6 are overruled.

In ground of error #12 appellant advances as error the "act of the trial court in allowing unlimited still and motion picture photography in the courtroom."

Only a brief mention of picture taking is found in the transcription of the court reporter's notes. Well into the trial appellant's counsel objected to the presence of a movie camera in the courtroom stating, "I have no objection when the court is actively not in session, but I do object to it while testimony is being taken." The court in effect sustained the objection.

Appellant, however, has utilized a formal bill of exception as authorized by Article 40.09, Sec. 6, V.A.C.C.P., referring to the above mentioned incident, stating that she had objected to all photography of the proceedings and the court sustained the objection, but thereafter the court allowed still and moving pictures in the courtroom during subsequent proceedings to which she admittedly made no further objection.

The court qualified the bill by stating it did not allow any picture taking after appellant's objection except during recesses when pictures of appellant and her attorney were taken with their permission; that any pictures of the court in session were taken from outside the courtroom or at a distance from the counsel table, jury box, etc., in an orderly and dignified manner.

The appellant answered the qualification with four bystanders' bills and the State countered with four controverting bystanders' affidavits (all four of these bystanders being jurors). Thus, the court is required to make its decision on the facts presented. 1 Branch's Ann.P.C., 2nd ed., Sec. 238, pp. 277, 278.

An examination of the record convinces us that the case at bar does not approach the "Roman holiday" atmosphere of Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, or that the handling of the photography was so prejudicial as to be inherently lacking in due process. Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543.

Ground of error #12 is overruled.

■ In ground of error #13 appellant complains of the trial court's failure to exclude the testimony of William R. Jones, Chief of the Investigation and Identification Bureau of the Alabama Department of Public Safety. Approximately three weeks prior to trial the State, in response to a defense motion, gave to appellant's counsel a list of all witnesses the State at that time expected to call during the trial but warned in writing that it was continuing its search for witnesses and would until the conclusion of the trial. The name of Jones was not on such list. It was shown, however, that the day before the trial commenced the prosecutor learned from Jones that Beth Grimes, a listed witness, would not be present, and he requested Jones to appear voluntarily since Alabama has no Uniform Act to Secure Attendance of Witnesses from Without the State in criminal proceedings and hence no reciprocal agreement with Texas. It appears that the State inadvertently failed to inform the appellant that Jones would be used instead of the witness Grimes and appellant made no further request as to the names of any additional witnesses which may have been discovered since the

time of the pre-trial motion. Under the circumstances, we perceive no error.

Further, Jones' testimony consisted only as to the identification of State Exhibit Nos. 14 and 19 as items he received from Beth Grimes in Alabama. State's Exhibit No. 14, a photograph of the appellant, identified by McGaha as one given to him had already been introduced without objection. State's Exhibit No. 19, a letter written by the appellant to Beth Grimes, was subsequently introduced without objection, and appellant later identified the letter as hers.

Ground of error #13 is overruled.

Next, appellant assigned as error the refusal of the trial court to order the complete transcription of the voir dire examination of the jury panel. If, in fact, all of such voir dire examination was taken by the court reporter, we find no request or motion for its inclusion in the record nor any refusal of the court to include the same.

Ground of error #14 is overruled.

We find no merit in appellant's unbriefed final claim that the "totality of the circumstances" denied her fundamental fairness, equal protection and due process of law.

Ground of error #15 is overruled.

■ The judgment in the case at bar orders the confinement of appellant in the Texas Department of Corrections for not less than 2 nor more than 10 years. This appears to be an improper application of Article 42.09, V.A.C.C.P. (the indeterminate sentence law) to the judgment rather than the sentence. The judgment will be reformed to comply with the jury's verdict assessing a definite penalty of 10 years.

As reformed, the judgment is affirmed.

DOUGLAS, J., not participating.