**Ex parte Norman Norris JONES.**

**No. 56559.**

Court of Criminal Appeals of Texas, Panel No. 2.

Feb. 15, 1978.

Rehearing Denied March 22, 1978.

Ken G. Anderson, Huntsville, for appellant.

Before ONION, P. J., and DOUGLAS and ODOM, JJ.

OPINION

ODOM, Judge.

This is a post-conviction habeas corpus application pursuant to Art. 11.07, V.A.C.C.P.

Petitioner was convicted of possession of heroin by a Dallas County jury in September 1971. On appeal his conviction was affirmed by a divided court. *Jones v. State,* Tex.Cr.App., 496 S.W.2d 566. The issue over which the Court split concerned the application of this portion of Article 40.09(4), V.A.C.C.P.:

"At the request of either party the court reporter shall take shorthand notes

of all trial proceedings, including voir dire examination . . . ."

At petitioner's trial his attorney requested compliance with this provision and the trial court denied his request. On appeal the majority held petitioner had shown no "harm or prejudice by virtue of the court's refusal to order the recording of the voir dire examination," and overruled the ground of error on authority of *Miller v. State*, Tex.Cr.App., 472 S.W.2d 269. On rehearing the Court adhered to its original disposition of the issue and discussed all prior cases on the statutory provision under examination, including *Morris v. State*, Tex. Cr.App., 411 S.W.2d 730; *Williams v. State*, Tex.Cr.App., 418 S.W.2d 837; *Evans v. State*, Tex.Cr.App., 430 S.W.2d 502; *McClain v. State*, Tex.Cr.App., 432 S.W.2d 73, all of which were decided in 1967 or 1968, long before petitioner's 1971 trial.

In *Cartwright v. State*, Tex.Cr.App., 527 S.W.2d 535, the requirement of *Jones v. State*, supra, that harm or prejudice must be shown, was overruled:

> "It is true that when the request for a court reporter has been made under Article 40.09, supra, to take the voir dire examination as opposed to the trial on the merits this court has concluded the failure to honor such requests was error, but was harmless error unless harm was alleged or shown to have resulted from the refusal to furnish a court reporter. *Morris v. State*, 441 S.W.2d 730 (Tex.Cr.App. 1967); *McClain v. State*, 432 S.W.2d 73 (Tex.Cr.App.1968); *Miller v. State*, 472 S.W.2d 269 (Tex.Cr.App.1971); *Young v. State*, 488 S.W.2d 92 (Tex.Cr.App.1972); *Williams v. State*, 418 S.W.2d 837 (Tex. Cr.App.1967); *Evans v. State*, 430 S.W.2d 502 (Tex.Cr.App.1968); *Vines v. State*, 479 S.W.2d 322 (Tex.Cr.App.1972); *Jones v. State*, 496 S.W.2d 566 (Tex.Cr.App. 1973); *Alvarado v. State*, 508 S.W.2d 74 (Tex.Cr.App.1974).

> "In the instant case a reversal is called for under the theory the statute becomes mandatory when the request is made and any refusal to furnish a court reporter is prejudicial or under the theory of the cases cited above since harm is alleged or shown. Since there should be no difference in the test applied merely because the request is to take the voir dire examination rather than the trial on the merits, the above cited cases are overruled as to the extent of any conflict with the opinion herein. The same portion of a statute should not be divided and given different interpretations. . . ." 527 S.W.2d, at 538–539, n. 6.

Petitioner contends the decision in *Cartwright*, supra, overruling the application of Art. 40.09(4), supra, upon which his appeal was decided, should be given retroactive application to his case, and that his 1971 conviction should now be set aside for the failure of the trial judge to grant his request to have a court reporter take down the jury voir dire.

Both before and after *Cartwright*, supra, the refusal of a trial court to grant a defendant's request to have a court reporter record the jury voir dire constituted error. The change in the law effected by *Cartwright* only concerned what record must be presented on appeal to show reversible error. Before *Cartwright* it was held that violation of Art. 40.09(4), supra, would present reversible error on appeal only if "harm was alleged or shown to have resulted from the refusal to furnish a court reporter." *Cartwright*, at n. 6. This rule for presenting reversible error was established well before petitioner's 1971 trial, *Morris v. State*, 411 S.W.2d 730; *McClain v. State*, 432 S.W.2d 73, and compliance with the pre-*Cartwright* rule for presenting reversible error had resulted in reversals prior to petitioner's trial. *Williams v. State*, 418 S.W.2d 837; *Evans v. State*, 430 S.W.2d 502. The application of that rule to petitioner's appeal cannot be said to have been unexpected. Had appellant alleged or shown harm to have resulted from the trial court's violation of Art. 40.09(4), supra, he would have been entitled to reversal.

The premise of petitioner's assertion that the *Cartwright* rule should be applied to his case is that he has been denied the protections of Article 40.09(4), supra, "because of

a misinterpretation of the statute which has now been rectified."[1] We reject this premise. The construction of Art. 40.09(4) has been the same both before and after *Cartwright*. In *Morris v. State*, supra, the first case to address the new provision of the 1965 Code of Criminal Procedure, the Court held:

"There can be no doubt but what the learned trial judge erred in failing to comply with all of its [Art. 40.09(4)] terms. The question remains, however, whether such error is reversible error given the particular circumstances of the case at bar."

Also on the direct appeal of petitioner's conviction the majority acknowledged that error was presented:

"In *Morris*, this court made clear that the trial court had erred and its action was not to be commended but refused to reverse an otherwise valid conviction in the absence of any specific assertion of prejudice." 496 S.W.2d, at 572.

As stated above, the change effected by *Cartwright v. State*, supra, *only* concerned a matter of appellate practice. That case did not change the requirements of Art. 40.09(4), nor did it declare that error under that provision would constitute fundamental error depriving a defendant of a fair trial. Such holdings would present different retroactivity considerations.

The matter goes neither to the power of the courts to exercise jurisdiction in the case, nor to the integrity of the trial process itself; rather it goes strictly to the review process. Furthermore, the changed rule did not extend[2] the scope of the review process; it merely reduced the threshold for securing reversal for violation of a rule designed to facilitate the effectiveness of the review process. It was designed to encourage obedience to such a rule by mandating reversal for its violation. As such, its purpose clearly has a prospective intent. We perceive no interest of justice that would be served by giving it retroactive effect, and petitioner has advanced none. The rule itself being a creature of judicial policy, and finding justice would not be served by applying the rule retroactively, we decline to do so.

Relief is denied.

---

1. Implicit in petitioner's argument is the idea that *Cartwright* discovered the true meaning of the statute. We reject this notion for the reasons stated in this opinion. This excerpt from 10 A.L.R.3d 1377–1378 sheds some light on the subject:

"Under the classical view that the courts merely discovered and announced existing law, which they had no hand in creating, no issue of restricting the rule of an overruling case to prospective operation could be presented, since the act of overruling was a confession that the earlier rule had been erroneous and should never have been applied at all, but the modern decisions, taking a more pragmatic view of the judicial function, have recognized the power of a court to hold that an overruling decision is operative prospectively only and is not even operative upon the rights of the parties to the overruling case. As a matter of constitutional law, retroactive operation of an overruling decision is neither required nor prohibited. Accordingly, most courts now treat the question of how an overruling decision should operate as one of judicial policy rather than of judicial power, and recognize that varying results may be reached, depending on the particular circumstances presented and the particular rule affected."

Without adopting either viewpoint to the exclusion of the other, we note that the judicial function involves elements of both, at times discovering the law and at times operating on policy considerations, as the context requires.

2. If anything, it restricted the scope of the review process, in that issues dependent on the denied record for determination are placed beyond the scope of review and are no longer even mentioned.