Victor Lopez, Jr., v. State.

No. 24119. October 27, 1948.
Rehearng Denied January 5, 1949.

Hon. H. D. Barrow, Judge Presiding.

*Leonard Brown,* of San Antonio, *Fritz C. Sorrell,* of Pearsall, and *Frank W. Steinle,* of Jourdanton, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of 99 years.

It was the state's theory, finding support in the evidence, that it was an unprovoked, willful, and malicious killing. It was

appellant's theory that the killing was in defense of himself and Santos Gavara.

The record reflects that on the night in question a number of Mexicans had assembled in and about a beer tavern operated by appellant. Some disagreement arose between Santos Gavara and Torribio Ovalle which precipitated a fight between them with the result that Ovalle was knocked down by Gavara. The deceased, Juan Vinton, Sr., and his son who were present inquired of Gavara why they were fighting; that they should not do so since they were brothers-in-law whereupon Gavara struck Juan Vinton, Sr., on the head with some undisclosed instrument and then threw a rock at him striking Vinton, Sr., in the face. At this juncture, Vinton, Jr., interceded in behalf of his father by cutting Gavara with a knife who ran and finally ran into the beer tavern where he took refuge behind the counter. Vinton, Jr., pursued him to the door of the tavern with Vinton, Sr., following him; that when they reached the door of the tavern Vinton, Sr., opened the screen door with the purpose of entering the same and when he was a step or two in the tavern appellant shot him several times. One bullet struck him in the abdomen, one above the right nipple, and one in the shoulder shattering the shoulder blade. The injured party was placed in an automobile and carried to the hospital by his son and Ovalle, but he was dead before a physician could be summoned.

Appellant's evidence is to the effect that he heard some disturbance on the outside of his tavern; that he went to the door with the purpose of ascertaining what was going on outside; that soon after he had reached the door Santos Gavara ran by him and said that he was cut; that he, appellant, followed Gavara who had gone behind the counter; that he saw the deceased, Juan Vinton, Sr., coming into the door with an open knife in his hand; that he was in fear of being killed or seriously injured by the deceased, or that he, the deceased, would kill Gavara or inflict serious bodily injuries upon him; that he, appellant, shot the deceased twice. However, no knife or any kind or character of weapon was found on the body of the deceased, the place where he was shot, or on the outside where he was picked up and carried to the hospital. The forgoing is a brief statement of the salient facts proved on the trial.

Appellant brings forward quite a number of complaints. These will be discussed in the order presented. By Bill of Exception No. 1 he complains because the court overruled his motion for a continuance based on the ground that one of his

attorneys was absent, to-wit: Leonard Brown, who was engaged in the trial of a case at San Antonio. The court qualified this bill and in his qualification states that at the time he granted defendant's motion for a new trial on the 30th day of August, 1947, he reset the trial of the case specially for December 8, 1947; that the said Leonard Brown and all of defendant's counsel were present at which time the court was informed that Mr. Brown was employed in the Bexar County case long after he had been employed in this case. It seems that Mr. Brown as well as all of appellant's counsel knew for four months the date on which this case was set for trial and no effort seems to have been made to arrange his affairs so as to be present at the trial of this cause. Furthermore, it appears that appellant was well represented by able counsel who protected him in all of his legal rights and no apparent injury resulted to him by reason of the absence of Mr. Brown, therefore, we overrule this bill.

By Bill of Exception No. 2 he complains of the action of the trial court in overruling his challenge for cause to the juror; Frank Burden, who had heard about the case and what the verdict of the jury was on a former trial, but notwithstanding the juror disclosed all of this, appellant took him and he served on the case. If the juror was objectionable to him, he should have exercised his right to peremptorily challenge him. He will not be permitted to sit quietly in the court room after the court overruled his challenge for cause, accept the juror, and later complain thereof without showing any reason for not having exercised a peremptory challenge. See Powers v. State, 23 Tex. App. 42; Sharp v. State, 6 Tex. App. 650; Steagald v. State, 22 Tex. App. 464; Williams v. State, 30 Tex. Cr. R. 354; and White v. State, 30 Tex. Cr. R. 652 (18 S. W. 462).

Bill of Exception No. 3 is, in our opinion, without merit and is overruled.

By Bill of Exception No. 4 he complains of the testimony given by Warren Smith, who was called by the state as a character witness as to whether appellant's reputation was that of a peaceable and law-abiding citizen or otherwise and who in response to questions propounded to him by the district attorney said, "Well, from what I see at night—I get out a good deal and I see and hear things, a man establishes that type of reputation around here without you having to file on him for any offense. I have heard and I have seen, I am testifying from what I have seen," whereupon appellant moved the court that said

testimony be stricken on the ground that he was testifying to his general reputation from what he had seen. The court qualified the bill by stating that the witness further testified that he knew what the people of the community say about the general reputation of defendant and that it was bad. Appellant accepted the bill as qualified by the court and is bound thereby. The bill as qualified fails to present reversible error.

By Bill of Exception No. 5 he complains of the action of the district attorney in his cross examination of Santos Gavara to inquire of him if he did not hit old man Juan Vinton on the night in question, to which the witness replied that he did not remember hitting him. Thereupon, the district attorney inquired of the witness if he was not charged in the county court with aggravated assault upon Juan Vinton and if he did not plead guilty thereto. Appellant urged various objections thereto which we need not state here. In our opinion, the district attorney had a right to ask the witness, after he said he did not remember hitting him, if he did not plead guilty to a charge of aggravated assault on Juan Vinton, Sr., alleged to have been committed by him on the night in question with the purpose of refreshing his memory and to contradict him.

The court instructed the jury on the law of murder with and without malice, on self-defense, and on suspension of sentence.

Appellant addressed five objections to the court's charge. His first objection is that the court erred in charging on the law of murder with malice since the evidence did not authorize such an instruction. It must be borne in mind that under our present statutes we have no degrees of murder. When an unlawful killing takes place, whether it be upon express or implied malice, it is murder. In the absence of any evidence showing express malice the law implies malice and the killing, under such circumstances, is murder although no previous ill will or hatred is shown. In order to bring a case within the category of murder without malice, it must be shown that adequate cause, as that term is defined by Art. 1257C, Vernon's Ann. P. C., existed which is to be determined by the jury and not by the court.

His next objection was that the court failed to affirmatively present his plea of self-defense; that it is too restrictive and is a limitation of his legal right to act on the appearance of danger; that the charge on self-defense is too restrictive in that it limits his right of self-defense to an actual attack by the deceased without regard to whether the deceased was only pre-

paring to make an attack; that the court failed to instruct the jury that it was not necessary that any actual danger existed at the time of the homicide or immediately prior thereto.

The court, in paragraph 10 of his charge, instructed the jury as follows: "A reasonable apprehension of death or great bodily harm whether to himself or some other person will excuse a party using all necessary force to protect his life or person, or the life or person of some other person, and it is not necessary that there should be actual danger provided he acted upon a reasonable apprehension of danger as it appeared to him, viewed from his standpoint at the time; and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant."

In the succeeding paragraph wherein the court made application of the law to the facts, he instructed the jury that if they believed from the evidence, or if they had a reasonable doubt thereof, that the deceased Juan Vinton, Sr., either acting alone or in conjunction with his son, Juan Vinton, Jr., was making or was about to make an attack upon the defendant, or upon Santos Gavara, or either or both of them which, viewed from the standpoint of the defendant, taking into consideration all the facts and circumstances as it reasonably appeared to him, the defendant, to be an unlawful attack upon him or the said Santos Gavara or both of them, reasonably producing in the defendant's mind from the acts and conduct of the said Juan Vinton, Sr., or Juan Vinton, Jr., or either or both of them, a rational fear or expectation of death or serious bodily injury either to himself, or the said Santos Gavara or both of them, at the hands of the deceased, either acting alone or in conjunction with Juan Vinton, Jr., and that acting under such reasonable apprehension of fear the defendant killed the deceased, then the defendant, under such circumstances would have the right to kill the deceased, and if you so find and believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict not guilty. He further instructed the jury that if they believed that the deceased was making an attack upon the defendant in conjunction with his son, Juan Vinton, Jr., or it reasonably so appeared to the defendant, viewed from his standpoint at the time, then the defendant had a right to act either in defense of himself or the said Santos Gavara, upon the hostile demonstrations of either of said assailants and to shoot and to kill either one or both of said assailants, and if

you so find and believe, or if you have a reasonable doubt thereof, you will acquit the defendant.

If we understand appellant's contention correctly, he claims that the charge is too restrictive, in this; that it limits his right of self-defense to an actual attack upon himself or Santos Gavara or both, whereas, he had a right to act upon apparent danger as well as upon actual danger; that the court by the instruction denied him the right of self-defense against apparent danger. It will be noted from the court's charge that he instructed the jury that the defendant had a right to act in defense of himself or of Gavara upon hostile demonstrations of either or both of them, as it reasonably appeared to him, viewed from his standpoint at the time.

It will also be noted that the court instructed the jury that if they believed from the evidence that the deceased either acting alone or in conjunction with his son was making or about to make an attack upon the defendant or upon Santos Gavara as viewed by the defendant from his standpoint, then he had a right to kill either or both of them. This did not limit his right of self-defense to an actual attack, but gave him the right of self-defense against an attack about to be made upon him or Gavara as well as against a hostile demonstration. It appears to us that the charge fairly presented to the jury the law of the case as to apparent danger, hostile demonstration, and actual danger. Therefore, we overrule this contention.

No reversible error appearing from the record, the judgment of the trial court is affirmed.

Opinion approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant bases his motion for rehearing upon two propositions, the first being that the trial court committed error in declining to continue this cause because of the absence of one of appellant's attorneys. The qualification to the bill of exception complaining of the court's refusal to grant a continuance is set out in our original opinion. The bill was accepted by appellant without objection to such qualification and is therefore binding upon him. The recitals in the qualification may not be impeached by the averments in appellant's motion.

The second proposition urged in the motion for rehearing is that Bill of Exception No. 4 shows that the trial court erred in not striking from the record the evidence of the witness, Warren Smith. A further examination of the bill reveals that upon its face it reflects no error. The bill recites that the State was attempting to qualify the witness to testify that the general reputation of appellant for being a peaceable and law-abiding citizen was bad, and that in response to the State's questions the witness said: "Well, from what I see at night—I get out a good deal and I see and hear things, a man establishes that type of reputation around here without you having to file on him for any offense, and I have heard and have seen, and I am testifying from what I have seen." It is observed that the bill fails entirely to show that the witness ever testified that appellant's reputation was bad, or that witness reached any conclusion one way or another about it from what he had seen. Appellant insists that the bill should be appraised from its face. Responding to such insistence, we must necessarily hold the bill to be insufficient to reflect error. In Sec. 207, p. 131, of Branch's Ann. Tex. P. C. is found the following statement. "A Bill of Exceptions should be made so full and certain in its statements as that, in and of itself, it will disclose all that is necessary to manifest the supposed error." The text is supported by many cited authorities.

The motion for rehearing is overruled.