**David Lee POWELL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 71399.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 7, 1994.

---

308

Gerald H. Goldstein, Cynthia Hujar Orr, San Antonio, for appellant.

Ronald Earle, Dist. Atty. & Philip A. Nelson, Jr., Asst. Dist. Atty., Austin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MEYERS, Judge.

Upon retrial[1] in November 1991, appellant was convicted under Texas Penal Code § 19.03(a)(1) for the capital murder, committed on May 18, 1978, of a law enforcement officer. The jury affirmatively answered the two special issues submitted under Article 37.071(b).[2] Appellant was sentenced to death as mandated by Article 37.071(e). Article 37.071(h) provides direct appeal to this court. We affirm appellant's conviction, but vacate and remand his sentence for further proceeding in accordance with Article 44.29(c).

### Factual Summary

Appellant does not challenge the sufficiency of the evidence. However, a brief factual context is usually helpful.

On the night of May 17, 1978 appellant called Sheila Meinert, an ex-girlfriend, and in a slightly hysterical manner asked her to drive him to south Austin. As Meinert got into the driver's seat of appellant's Mustang, she noticed a machine gun on the back floor. Appellant also had a rifle, a pistol, a live hand-grenade, ammunition and a knapsack containing about 2.25 ounces of methamphetamine, literature about weapons and radical politics, and written accounts of his drug dealings.

A uniformed police officer in a marked car, Ralph Ablanedo, pulled appellant and Meinert over and asked for Meinert's driver's

1. Appellant was tried and convicted for the same offense and sentenced to death in 1978. On appeal we affirmed that conviction. *Powell v. State,* 742 S.W.2d 353 (Tex.Crim.App.1987). The United States Supreme Court on writ of certiorari vacated and remanded for further consideration. *Powell v. Texas,* 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 926 (1988). On remand we again affirmed, *Powell v. Texas,* 767 S.W.2d 759 (Tex.Crim.App.1989), and again appellant's petition for writ of certiorari to the United States Supreme Court was granted. In *Powell v. Texas,* 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989) appellant's conviction was reversed. The appeal before us today is from appellant's retrial, reconviction, and resentence of death.

2. Hereinafter all article references are to the Texas Code of Criminal Procedure unless otherwise cited.

license. When she told him that she had lost it, he asked to see appellant's license and attempted to run a computer check. The dispatcher informed Officer Ablanedo that the computers were down. Ablanedo therefore issued Meinert a summons and allowed her and appellant to proceed.

Momentarily, the dispatcher informed Officer Ablanedo that there was possibly an outstanding theft warrant against appellant. Ablanedo pursued the Mustang in his patrol car and ordered Meinert to again pull over. Parking behind the Mustang, he exited the patrol car. As Meinert walked toward the car, shots were fired. Meinert ran back to the Mustang and drove off.

Bobby Bullard, a bystander, testified that Officer Ablanedo and Meinert were walking toward each other, when he heard two to four gunshots and saw Ablanedo fall. Ablanedo stood up but was downed by another round of gunfire. When Bullard looked at the Mustang, the back windshield was shattered, and appellant was inside the car holding a rifle and someone's head was visible below the dashboard in the driver's seat.

Appellant mortally wounded officer Ablanedo with ten gunshots to his chest, arm, abdomen, and leg.

### Voir Dire

■ In his fifth point of error appellant alleges that the trial court erred in denying his timely motion to shuffle the jury. The State argues that appellant failed to obtain a ruling from the trial court, and thus, has failed to preserve error. We agree; appellant has failed to preserve error. Not only is there no final ruling, but the record also fails to establish that appellant made a clear, unequivocal request for a jury shuffle. *See* Tex.R.App.P. 52(a).

According to the record defense counsel objected to the trial court's voir dire procedure. Objecting to the procedure, he stated:

I had no idea you were going to be excusing jurors on the voir dire while we were— we haven't even had a chance to shuffle them yet. I would ask for a shuffle before we even start eliminating juror.... It was my understanding judge, so the record

is clear, that you were going to do nothing more than to get them to fill out their information sheet and tell them to come back, and we could determine our shuffle after that.

(XI, 57–58). These remarks, along with counsel's failure to pursue a final ruling, force us to conclude that either counsel did not actually motion for a shuffle or the trial court did not understand that defense counsel was requesting a shuffle. This type of ambiguity and misunderstanding is precisely what the requirement of a final ruling seeks to avoid.

■ To preserve error for review a defendant must receive an adverse ruling on his objection, and the ruling must be conclusory; that is, it must be clear from the record that the trial judge in fact overruled the defendant's objection; otherwise error is waived. *See e.g. Ramirez v. State,* 815 S.W.2d 636, 643 (Tex.Crim.App.1991) (citing *Darty v. State,* 709 S.W.2d 652 (Tex.Crim.App.1986) and *Bailey v. State,* 532 S.W.2d 316, 322 (Tex.Crim.App.1975)); Tex.R.App.P. 52(a). *See also and compare Martinez v. State,* 867 S.W.2d 30, 35 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *Chappell v. State,* 850 S.W.2d 508, 510 (Tex.Crim.App.1993) (Court's granting State's motion for shuffle was final ruling on appellant's objection to shuffle). Having failed to make his request clear and to obtain a final ruling, appellant has not preserved error for review. Appellant's fifth point of error is overruled.

■ In point of error Six, appellant avers that the trial court erred in denying his timely motion for a jury shuffle and then granting the State's untimely motion to shuffle the jury. Again we must agree with the State that no error was preserved.

The question of appellant's "request" for a jury shuffle has been disposed of in point of error five, *supra.* The record also reveals that defense counsel was offered and declined to shuffle the venire (XI, 294–95), and then failed to object when the trial court granted the State's motion for a shuffle. (XI, 298). Without a specific timely objection no error is preserved for review. *See Mar-*

*tinez. v. State,* 867 S.W.2d at 35; *Chappell,* 850 S.W.2d at 510; Tex.R.App.P. 52(a). Appellant's sixth point of error is overruled.

■ Appellant urges, in points of error seven and eight, that the trial court denied him the effective assistance of counsel and violated Article 35.17 by limiting the individual voir dire of fourteen venirepersons to *Witherspoon* issues. *See Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Appellant does not allege that the trial court completely denied him the individual voir dire of these veniremen, but merely that the trial court erred in forcing him to begin voir dire with questions about the veniremembers' attitudes toward the death penalty. Appellant asserts that the Texas Constitution and Article 35.17 guarantee that he be permitted to ask proper questions in any order he chose; he alleges this is crucial to voir dire strategy.

The State counters that the procedure employed by the trial court, limiting the initial voir dire to death qualification issues, is indistinguishable from the procedure upheld in *Martinez,* 867 S.W.2d at 35; *see also Bernard v. State,* 730 S.W.2d 703 (Tex.Crim.App. 1987), *cert. denied,* 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988).

In *Martinez,* we stated that questions about a veniremember's views regarding legal procedures and capital punishment are best addressed through individual voir dire. 867 S.W.2d at 35; *see also* Art. 35.17(2). But, we also emphasized that the conduct of voir dire rests within the sound discretion of the trial court, and only abuse of such discretion calls for reversal. *Martinez,* 867 S.W.2d at 35. We concluded that Article 35.17 does not in any way purport to restrict the discretion of the trial judge in conducting voir dire. *Id.*

In *Martinez,* veniremembers were summoned in panels and briefed on the capital sentencing scheme. The parties were then allowed to examine each individual concerning their attitudes regarding the death penalty. When a sufficient number of venire-

members was "death qualified" a general voir dire was conducted. After the general voir dire, the parties exercised their peremptory challenges and the jury was selected. *Id.* at 35.

In appellant's case it appears that the one-hundred-seventy-one prospective jurors were assigned to the trial court. This array was divided into two panels. The trial court began the voir dire of each panel by explaining general legal concepts such as the presumption of innocence. The judge then asked questions designed to evoke responses suggesting potential challenges for cause. In this vein the trial court explained the different attitudes towards the death sentence and the legal significance of each of the attitudes under *Witherspoon* and its progeny. The court then asked any veniremember inclined toward one of the attitudes described to raise his or her hand. Those who raised their hands were individually examined regarding the issue by each of the parties. The trial court did not require the parties to exercise any peremptory challenges based on this abbreviated examination; they were required only to make any challenges for cause based on the potential jurors' attitudes toward the death penalty.

*Martinez* is indistinguishable from appellant's case. The trial court in no way interfered with appellant's rights in its attempt to streamline the labyrinthical process of selecting a jury in a capital murder case.[3] The procedure employed by the trial judge in this case satisfies Article 35.17(2) and in no way interfered with appellant's right to counsel. How best to conduct voir dire remains a determination for the trial court, not appellant's voir dire strategies. Points of error seven and eight are overruled.

■ In point of error twenty-eight, appellant avers that the trial court erred in granting the State's challenge for cause against venireperson Hodgkins on grounds not specifically listed in Article 35.16. Appellant argues that Article 35.16 contains "an exclusive list" of all the grounds for removing a juror for cause.

---

3. We note that appellant's brief is laden with conclusory arguments which assert theories of error but fail to show harm. For example, appellant does not explain how specifically the court's decision to limit voir dire interfered with his right to counsel. How was he harmed?

In *Allridge v. State*, 850 S.W.2d 471, 484–485 (Tex.Crim.App.1991), *cert. denied,* — U.S. ——, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993), we held that

A challenge for cause can properly be asserted on grounds which are not specifically enumerated in Article 35.16, where such a challenge is based on facts that show that the prospective juror would be 'incapable or unfit to serve on the jury.' These challenges, which are not based upon any ground specifically enumerated in the statutes are ordinarily addressed to the sound discretion of the trial judge.

(citation omitted).

The record indicates that venireperson Hodgkins early in her individual voir dire informed the court of her extreme nervousness. (XVII, 1902). Noting that she was physically shaking, the court offered to excuse her, but appellant objected, requesting instead for the court to give her "soothing instructions" to calm her. (XVII, 1905). During her examination, Ms. Hodgkins stated that she would "really rather not" serve on the jury but that she would survive emotionally and physically because she had survived "crisis-type situations" before. (XVIII, 1009–1010). Though she appeared to become more tranquil as her examination progressed, she stated that her nervousness might reappear during deliberations. She asserted that her health would not be adversely affected. The State challenged for cause under Article 35.16(a), appellant objected, but the court granted the State's challenge, explaining:

[H]aving observed this witness' demeanor and conduct ... based upon the totality of the circumstances, of her statements concerning her conduct in the jury room and what it is doing to her physically, the court is not going to impose upon this citizen a duty of going through this trauma.... I am concerned about her well-being, having observed her. I brought it to counsel's attention....

(XVII, 1951–1952).

The facts of this case do not expose an abuse of the trial judge's great discretion in these matters which are best left to those experiencing them first-hand. *See e.g., Cantu v. State,* 842 S.W.2d 667, 681 (Tex.Crim. App.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). A venireperson so traumatized by the experience of being called to jury duty that she is physically shaking, may be properly struck for cause as unfit under Article 35.16, despite her assurances that she will survive the "crisis." Appellant's twenty-eighth point of error is overruled.

■ Point twenty-nine voices appellant's contention that the court erred in sustaining the State's objection to a proper question during the examination of veniremember Aldridge.

According to the record, appellant's counsel explained the two special punishment issues to the veniremember and then explained that the judge would either give the jury a third mitigation issue or instruct the jurors to nullify one of the two special issues by voting "no" if they believed mitigating circumstances existed which justified life imprisonment even if they believed the evidence was sufficient to reply affirmatively. The following ensued, giving rise to appellant's point of error:

[Venireman Aldridge]: I'm not sure that I understand fully. I would never knowingly participate in killing another human being. And you're saying that to stand by that belief, I would have to lie about my responses to these two questions.

[Appellant's counsel]: You're able to do that.

[Venireman Aldridge]: I'm able to lie about it?

[Appellant's Counsel]: Yes, on the third—

(XI, 103). The State's objection to the assertion that the veniremember could lie in his answer to the two special issues was sustained.

■ The right to ask proper questions does not include the right to misstate the law. *See e.g. Zimmerman v. State,* 860 S.W.2d 89, 96–7 (Tex.Crim.App.1993), *vacated and remanded on other grounds,* — U.S. ——, 114 S.Ct. 374, 126 L.Ed.2d 324, *and reaffirmed,* 881 S.W.2d 360 (1994). When jurors are given a nullification instruction, they are not asked to lie; they are asked to

give effect to their "well reasoned moral response" to mitigating evidence. *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). That is, they are asked to look beyond the fact that the evidence requires an affirmative answer, to consider whether some mitigating factors exists such that appellant should not be sentenced to death. If they find a mitigating circumstance, they are asked to give effect to their determination by answering one of the special issues negatively despite the evidence. Appellant's counsel misstated the law; he did not ask a question.

■ Moreover, appellant subsequently asked his question in a proper form without misstating the law.[4] This rendered harmless any error arising from appellant's not being permitted to ask the "question" in an improper form. *See e.g. Trevino v. State*, 815 S.W.2d 592, 604–5 (Tex.Crim.App.1991), *reversed and remanded on other grounds*, 503 U.S. 562, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1992), *and reaffirmed* 864 S.W.2d 499 (1993), *cert. denied* — U.S. ——, 114 S.Ct. 1237, 127 L.Ed.2d 580 (1994). Appellant's twenty-ninth point of error is overruled.

■ In his thirtieth point of error, appellant complains that the trial court erred in overruling his objection to the State's informing veniremember Beasley that a sentence of life imprisonment does not mean that the accused will actually spend his life in prison. Again, the State's response, that error was not preserved, is supported by the record.

According to the record, the State informed Beasley that life imprisonment did not necessarily mean life imprisonment. When appellant's counsel objected, Beasley was removed from the courtroom. The trial court then reminded both parties that they had agreed not to discuss the issue of parole. The State then noted that the Defense had introduced the issue and that they felt it necessary to clarify any misperceptions created by defense counsel's statements. Judge Jones responded that he understood, and defense counsel added, "I understood, too." (XIII, 2198). There appears in the record no final ruling on the matter; Defense counsel did not press the objection. When the State resumed voir dire, no objection was made to the State's informing Beasley that "life without parole" is not an option in Texas. Furthermore, defense counsel subsequently accepted Ms. Beasley as a juror without objection. We are forced to conclude that appellant abandoned his objection.

Without a final ruling to his objection, appellant has not preserved error for review. *See e.g. Ramirez v. State*, 815 S.W.2d at 643; Tex.R.App.Pro. 52(a). Moreover, in accepting the veniremember as a juror without objection, we are forced to conclude that defense counsel must have been satisfied that the alleged error was harmless or cured.[5]

Appellant's thirtieth point of error is overruled.

### Pre-trial

■ Appellant's thirty-first point alleges that the trial court violated the mandate of

---

4. The record does not clearly reflect what appellant intended to ask after informing the venireman that he could lie ... the question asked immediately following the objection was whether the venireperson could vote "no" to the special issues to give effect to mitigating evidence.

5. The situation is analogous to those where a wrongly denied challenge for cause is not preserved unless the venireman is peremptorily struck, appellant exhausts his peremptories, and additional curative peremptory challenges are denied. The harm in this instance is that the veniremember is exposed to an alleged incorrect statement of the law. If appellant subsequently accepts the veniremember without at least a renewed objection, we must presume that the venireman has subsequent to the misstatement of law, proven acceptable to the appellant. *See*

*Teague v. State*, 864 S.W.2d 505, 512 (Tex.Crim. App.1993) (Defendant waived objection to State's challenge for cause in failing to object to venireman's excusal); *Kemp v. State*, 846 S.W.2d 289, 301 (Tex.Crim.App.1992) cert. denied, — U.S. ——, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993) (improper excusal for cause not preserved for review where appellant never clearly informed trial court that he was resisting the State's challenge); *Lopez v. State*, 152 Tex.Crim. 562, 216 S.W.2d 183, 185 (1948) (appellant waived error in overruled challenge for cause by accepting juror without peremptorily striking him); *Lilly v. State*, 130 Tex.Crim. 600, 95 S.W.2d 703 (1936) (in accepting juror without objection or challenge, appellant waived any error in seating veniremen who had sat on appellant's jury in prior conviction).

Article 46.02 in appointing Dr. Richard Coons to examine appellant for competency and insanity even though he had testified against appellant at his first trial. Article 46.02 requires the appointment of "disinterested" experts to make such examinations.

Pursuant to appellant's notice of intent to present an insanity defense in the cause now under review, the State filed a motion requesting the appointment of Coons to examine appellant. The trial court granted the motion. At a pretrial hearing appellant asserted that Coons was not a disinterested party because he had testified at appellant's first trial. The trial judge declined to appoint another psychiatrist and ordered counsel not to interfere with Coons' examination. Appellant withdrew his notice of intent to raise the insanity defense. Appellant later confirmed the withdrawal of the insanity defense. Dr. Pesikoff testified at punishment for the defense that appellant was not legally insane at the time of the offense.

In *Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991), the appellant claimed that the professional staff of Rusk State Hospital, because employed by the State, could not be "disinterested experts" within the meaning of Article 46.02. Stating that the qualification of expert witnesses is a determination which rests within the discretion of the trial court and not be disturbed absent clear abuse, we held that Sterling had failed to establish such an abuse. The fact that a psychiatrist works for the State does not alone establish that he is biased. *Id. See also Von Byrd v. State*, 569 S.W.2d 883, 895–7 (Tex.Crim.App.1978), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073 (1979).

Similarly, in the case at bar, no abuse of discretion has been established. Appellant fails to put forth any argument much less evidence showing that Coons was actually biased. Appellant argues that Dr. Coons in testifying at appellant's first trial became an agent of the State. Appellant cites *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). While it is true that Coons was for purposes of Sixth Amendment analysis found to be an agent of the State, it does not follow that he cannot be a "disinterested witness" for purposes of Article 46.02. That Coons is required by the Sixth Amendment to provide a defendant with notice as to the scope of a psychiatric examination does not render him either interested or disinterested.

Appellant also argues that Coons could not be "disinterested" at appellant's retrial because he had testified against appellant at the first trial. The fact that Coons testified against appellant fourteen years ago does not alone establish that he was or is biased against appellant. Some evidence of bias is required. We reject appellant's argument that if an expert has reached a conclusion unfavorable to him and so testified, the expert is as a matter of law biased.

Without evidence that he was actually biased against appellant, we cannot find that the court abused its discretion in appointing Dr. Coons to examine appellant. Appellant's thirty-first point of error is overruled.

## Sentencing Trial

■ Appellant alleges in his eleventh point of error that the trial court erred in its charge to the jury, in accepting an incomplete and illegal verdict, and in sentencing appellant to death without the authority to do so. Appellant explains that the trial court failed to submit to the jury the "deliberateness" special issue required by the version of Art. 37.071(b)(1) applicable to his case. He further explains that since the jury never answered the requisite special issue, the verdict was incomplete and illegal. Appellant also argues that the sentence of death is not authorized, because the "deliberateness" issue was not answered.

Appellant is correct. The charge submitted to the jury, and therefore the verdict returned and the sentence imposed in his case were contrary to the mandate of the legislature as expressed in Article 37.071's effective dates. *See*, Tex.S.B. 880, Sec. 5., 72nd Leg., R.S. (1991) V.T.S.L.S. Chapter 838. The oversight of the trial court in submitting, and the State in failing to object to, the incorrect punishment charge was perhaps due to the then recent amendments to

Article 37.071. As reflected in both the official and unofficial versions of the Texas Code of Criminal Procedure in circulation at the time of appellant's trial, November 1991, Article 37.071 had been amended by Senate Bill No 880. Section 1 of the bill deleted the "deliberateness" special issue and added the "anti-parties" special issue. *See* Tex.S.B. 880, 72nd Leg., R.S. (1991) V.T.S.L.S. Chapter 838. Section 5 of the bill, also reflected in the circulating versions of the Code of Criminal Procedure, unequivocally stated:

(a) The effective date of this Act is September 1, 1991, and the change in law made by this Act applies only to an offense that is committed *on or after* September 1, 1991.

. . . . .

(b) An *offense before the effective date of this Act* is covered by the law in effect when the offense was committed, and the former law is continued in effect for this purpose.

(Emphasis added). The mandate of the legislature is unequivocal. Not only did the legislature mandate that the amendments were only effective for offenses committed "on or after September 1, 1991," but the legislature also specifically mandated that for offenses committed prior to September 1, 1991 the version of Article 37.071 in effect on the date of the offense would apply.

■ Thus, the special issues to be asked in appellant's punishment charge were those in effect at the time of the offense, May 1978. In May 1978, Article 37.071 in pertinent part required:

(b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

*(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;*

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and . . .

(c) The state must prove each issue submitted beyond a reasonable doubt, and the

jury shall return a special verdict of 'yes' or 'no' on each issue submitted. . . .

(e) If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death.

(emphasis added). By statutory mandate, the trial court was required in appellant's case to submit the "deliberateness" issue to the jury, the jury was required to return a verdict which addressed the "deliberateness" issue, and the sentence of death could not be pronounced without an affirmative answer to the "deliberateness" question. Yet, appellant's jury was not charged with the issue and therefore did not return an answer to it.

According to the record, it was at appellant's request that the trial court did not submit the "deliberateness" issue in the punishment charge. At appellant's request the trial court submitted instead the "anti-parties" special issue as appeared in the amendments to Article 37.071 not in effect for appellant's case. The State failed to object to the substitution.

■ On appeal, the State argues that appellant cannot now complain because the improper jury charge was altered and submitted at his own request. The State cites *Livingston v. State*, 739 S.W.2d 311, 341 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). But, in *Livingston* the capital murder defendant had requested, in addition to the mandatory special issue, the submission of the third "provocation" special issue, which is mandatory only if there is evidence of provocation by the victim. *See* Art. 37.071(b)(3). We held that *Livingston* could not complain about the improper submission of "provocation" special issue, explaining:

Error, if any, was initiated by and was to the benefit of appellant. It is a long-standing rule that a defendant may not request a charge and when that charge is given as requested complain on appeal of any error.

Appellant's case is distinguishable. *Livingston* dealt with inclusion of a gratuitous special issue, not the exclusion of a statutorily

required issue. Appellant's question is more complex.

■ Though some precedents are strongly analogous to appellant's point of error, it seems that the question presented is one of first impression; whether the effective dates of statutes, mandated by the legislature may be waived or forfeited by capital murder defendants? It is a question of law, and since questions of law are the province of trial courts, the specific question is whether a trial court may ignore an unequivocal, legislatively mandated effect dates of Article 37.071, even when at a capital murder defendant's behest. For the following reasons, we hold that a defendant may not waive and a trial court cannot ignore the effective dates of Article 37.071.

■ There are three types of rules in our legal system: 1) Absolute requirements and prohibitions which cannot be waived or forfeited; 2) rights of litigants which must be implemented unless affirmatively waived; and 3) rights of litigants which are implemented upon request and can be forfeited by a failure to invoke them. *Ex parte Sims*, 868 S.W.2d 803, 804 (Tex.Crim.App.1993), *citing Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim.App.1993).

■ The effective dates of statutes are absolute requirements. Absolute requirements and prohibitions are independent of the litigants' wishes. *Marin*, 851 S.W.2d at 279. The implementation of these absolute requirements and prohibitions is not optional and is therefore, neither waivable nor forfeitable by any party. *Id.* In *Marin* we noted that the jurisdiction of the courts is the clearest example of such absolute systemic requirements and prohibitions. *Id.* As we noted in *Marin*, even if he consents, a defendant may not be tried in a County Court at Law for a felony offense. *Id., citing e.g., Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex. Crim.App.1980). Besides jurisdiction, we can think of no less optional a requirement than the "effective date" of a statute.

As jurisdiction empowers courts, effective dates empower legislation. The meaning of the word *effective*, according to Webster's Ninth Collegiate Dictionary is "to cause to

come into being." In criminal matters the existence and elements of an offense are governed by the effective date of the legislation. If the effective dates of Article 37.071 are taken seriously, appellant was sentenced to death under a nonextant version of 37.071. Neither a trial court nor a criminal defendant may bring into being a statute, especially not against the explicit will of the legislature.

In the case of Art. 37.071, its effective dates define offense. This is so because the effective dates determine what elements a jury must find to establish a capital murder punishable by death. In appellant's case the defining power of effective dates is especially poignant; at the time of the offense, May 1978, Article 37.071 required that a jury find, beyond a reasonable doubt, that appellant committed murder with "deliberateness" before he could be sentenced to death. Thus, through the effective dates of Article 37.071 the legislature defined a capital murder punishable by death as including the element of "deliberateness" at the time appellant committed the offense.

In the sense then that the effective dates define what constituted capital murder punishable by death on a given date, it is analogous to statutory definitions. We have held that statutory definitions may not be altered even at the request of criminal defendants. They are absolute requirements. *See Casias v. State*, 503 S.W.2d 262, 263 (Tex.Crim.App. 1973) (Defendant executed sworn waiver of his right to be present at sentencing; sentence voided due as violation of Art. 42.02 defining sentence as "made is the presence of defendant").

In so far as the sentencing procedure and sentence of death imposed in appellant's case were not authorized by the legislature, and indeed, are in conflict with the legislature's explicit mandate, appellant's case is analogous to those cases addressing the waiver of statutorily required sentences and sentencing procedures.

■ Recently, in *Ex parte Sims* the issue presented was whether a defendant could affirmatively waive concurrent sentences when found guilty of more than one offense arising out of the same criminal episode pros-

ecuted in a single criminal action, or whether the prohibition against consecutive sentences in section 3.03 of the Texas Penal Code is absolute and not subject even to affirmative waiver. Noting the well established principle that a defendant may not by agreement render legal a punishment which is not otherwise authorized by law, we held:

> This language [of § 3.03] creates an absolute restriction of a trial court's general authority to impose consecutive sentences similar to the restrictions Article 42.12, Sec. 3g(a), V.A.C.C.P. places on a trial court's general authority to grant probation, ... **An absolute requirement or prohibition may not be lawfully avoided, even with partisan consent.** *Marin*, 851 S.W.2d at 280. Accordingly, Applicant was not able to consent to imposition of consecutive sentences, and entry of the cumulation order was not authorized, notwithstanding the terms of the plea agreement.

*Id.* (emphasis added). In the case at bar the legislative mandate is also clear. Before the sentence of death can be imposed upon appellant a jury must affirmatively determine that appellant's lethal conduct was "deliberate." Art. 37.071(b). Just as Sims could not consent to the imposition of a sentence not authorized by law, appellant could not consent to a sentence of death that was not authorized, and in fact, is contrary to the statutory mandate. *See also Casias*, 503 S.W.2d at 263 (Defendant may not waive requirement that he be present at sentencing).

We have also held the legislature's prescribed procedures in Article 37.071 are mandatory and may not be waived. In *Sorola v. State*, 693 S.W.2d 417, 418 (Tex.Crim.App. 1985), for example, both parties agreed that because the State had waived the death pen-

alty, the proper procedure was to have the court assess punishment; the trial court consented and sentenced Sorola to life imprisonment. We reversed, holding that trial courts, with or without the consent of the parties, are not free to ignore the mandatory procedures set forth in Article 37.071. *See also*, 37.071; *Ex parte McKinney*, 688 S.W.2d 559 (Tex.Crim.App.1985); *Ex parte Bailey*, 626 S.W.2d 741 (Tex.Crim.App.1981); *Ex parte Jackson*, 606 S.W.2d 934 (Tex.Crim. App.1980); *Eads v. State*, 598 S.W.2d 304 (Tex.Crim.App.1980); *Ex parte Dowden*, 580 S.W.2d 364 (Tex.Crim.App.1979); *Batten v. State*, 533 S.W.2d 788 (Tex.Crim.App.1976).[6]

In *Marin v. State*, 851 S.W.2d 275 (Tex. Crim.App.1993), we recognized that "the system ... includes a number of requirements and prohibitions which are essentially independent of the litigants' wishes." *Id.*, at 279. Besides the jurisdiction of courts, we can think of no clearer example of this type of requirement or prohibition than the "effective date" of statutes. We cannot allow trial courts and criminal defendants to mutually consent to usurp the powers of the legislature. Thus, we must affirm the principle of absolute requirements and prohibitions which are not optional, waivable, or forfeitable, stating that neither a capital murder defendant nor a trial court may ignore the statutory scheme mandated by the effective dates of Article 37.071. The effective dates of statutes are absolute requirements, nonwaivable and nonforfeitable; criminal defendants may not in Texas legislate the law to be applied in their case.

We hold that the trial court erred in ignoring the mandated effective dates of Article 37.071 in favor of the scheme requested by appellant. We must also hold that the verdict is incomplete since it did not answer the

---

6. *Sorola* relied on the principle that a capital murder defendant may not waive a jury trial. Here too precedent is analogous to the question raised by appellant's case. In *Eads v. State*, 598 S.W.2d 304, 307 (Tex.Crim.App.1980), we reversed the life sentence imposed on a capital murder defendant where the jury returned a negative verdict on the provocation special issue, but had failed to answer the first two special issues. We held that the accepting of the incomplete verdict and imposing a sentence on the verdict was tantamount to the court answering "no" to

one of the special issues left unanswered by the jury, thus denying Eads a jury trial. Since the trial judge in appellant's case could not enter a sentence of death unless the jury affirmatively answered the issue of deliberateness, in imposing the death sentence he effectively provided an answer to that issue himself. Thus, the imposition of a sentence of death in appellant's case is analogous to the waiver of a jury punishment trial, which we have repeatedly held is not within the powers of one accused of capital murder.

required "deliberateness" special issue. The sentence of death is likewise tainted; Art. 37.071(e) required an affirmative answer to the "deliberateness" issue before a sentence of death could be imposed. Appellant's eleventh point of error is sustained.

In light of our holding, the remaining points of error arising from and affecting only the punishment stage of appellant's trial, none of which challenge the sufficiency of the evidence, are dismissed as moot.[7]

Under the mandate of Article 44.251, we must vacate appellant's sentence of death and remand to the district court for further proceeding in accordance with the dictates of Article 44.29(c).

McCORMICK, P.J., and MILLER and WHITE JJ, dissent.

CAMPBELL, J., not participating.

CLINTON, Judge, concurring.

I join the Court's opinion in this cause, but write separately to add a qualification to its treatment of appellant's eleventh point of error. The Court's opinion frames the issue as whether the "effective dates of statutes are absolute requirements." Op. at p. 316. I believe this to be a subtle but significant distortion of the true issue in this cause.

What statutory provision controls at any given time is simply a matter of statutory construction. By its terms, the 1991 legislative amendment to Article 37.071 was made to apply only to offenses committed after its September 1, 1991 effective date. See Acts

1991, ch. 838, § 5, p. 2901, eff. Sept. 1, 1991. For any capital offense committed *before* September 1, 1991, the law at the time of appellant's trial required an affirmative finding of "deliberateness" by the jury before the trial court was authorized to sentence the accused to death.* Under Article 1.14(a), V.A.C.C.P., a capital accused against whom the State seeks imposition of the death penalty is not permitted by the system to waive a jury trial. I take this to mean that a jury finding on every issue the law assigns the jury to decide is an absolute feature of the system, not optional with the parties. *Marin v. State*, 851 S.W.2d 275 (Tex.Cr.App.1993). That appellant himself requested to be tried under the new punishment regime, therefore, cannot serve as either a forfeiture or even an express waiver of the requirement that a finding of deliberateness be made prerequisite to a lawful sentence of death. The law applicable to this appellant simply prohibits a judgment that includes a sentence of death in the absence of a jury finding of "deliberateness," and the trial court erred to enter such a judgment. Such error need not be preserved for appeal. *Marin v. State*, supra.

MALONEY, Judge, concurring.

I join the opinion of the Court with the following note.

The law at the time of the offense required that before a court could assess the death penalty a jury and only a jury must have submitted to it for its answer an issue requiring them to find that the conduct was "delib-

---

7. Some of the unaddressed points of error are troubling in that they reflect a pattern by the State and trial court of disregard for certain basic constitutional principles. Points one and two, for example, complain of the lynch-mob atmosphere created by the single file entry into the court room of about eighty-five uniformed and armed police officers with mourning ribbon taped over their badges. It is particularly unsettling that the demonstration was apparently orchestrated by the prosecuting attorney to give effect to his closing argument. Appellant complains that the defense's closing argument was made over the head of a police officer sitting on the floor within the bar because of the crowded condition of the court room. Similarly disturbing was the State's and trial court's disregard for legal precedent set by the Supreme Court of the United States in reversing appellant's prior capi-

tal murder conviction,—said precedent affecting the testimony of Dr. Coons as to punishment issues.

We note that the disregard for the legislative mandates of Art. 37.071 poignantly reflects the pattern of escalating disregard for constitutional order on the part of the trial court and the State in appellant's case. Nowhere is the rule-of-law more important than in our courts, and our prosecuting and policing agencies.

* Appellant was tried in November of 1991, and thus, former Article 37.071, V.A.C.C.P., was the controlling punishment provision. Had appellant been tried after August 30, 1993, however, Article 37.0711, V.A.C.C.P., would apply. Under either provision, the trial court was not authorized to sentence appellant to death *sans* an affirmative finding of "deliberateness."

erate." This is statutorily required. Tex. Code Crim.Proc.Ann. art. 37.071(b)(1).

The law prohibits a defendant from waiving trial by jury in a capital case where the State is seeking the death penalty. This too is statutory. Tex.Code Crim.Proc.Ann. art. 1.14(a).

For us to hold otherwise would require us to act as legislators rather than judges.