Sotero GUTIERREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–95–00381–CR.

Court of Appeals of Texas,
San Antonio.

April 23, 1997.

Gammon D. Guinn, Luis R. Vera, Jr., San Antonio, for appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for appellee.

Before GREEN, J., CHARLES F. CAMPBELL, Former Judge,[1] and

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

ALFONSO CHAPA, Chief Justice (retired).[2]

CHARLES F. CAMPBELL, Former Judge.

Appellant, Sotero Gutierrez, was indicted for the offense of capital murder. After a jury trial, appellant was found guilty as charged in the indictment. The trial court assessed punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division.[3] In four points of error, appellant argues his extrajudicial statements were inadmissible; the trial judge erred in failing to charge the jury on voluntariness; and the trial court erred in permitting a large number of police cadets to sit in the courtroom during the trial. We will affirm.

Since there is neither a factual nor legal challenge to the sufficiency of the evidence, a brief summary of the facts will suffice. On June 20, 1993, appellant was looking for his sometime girlfriend, Martha Medina. He found Medina sitting in her car in front of a local tavern. Appellant, in his car, pursued Medina, in her car, after she fled the parking lot of the tavern. Eventually appellant caught Medina and approached her car on foot. Appellant then shot Medina and a passenger in Medina's car, Bibiana Montoya, killing both of them.

On June 21 and into the early morning hours of June 22, 1993, appellant gave two extrajudicial statements to police. The first statement given by appellant was wholly exculpatory. In the second statement, given in the early morning hours of June 22, appellant admitted that he shot Medina with in-

tent to kill her, but claimed he did not know that Montoya was also hit.

In his first point of error, appellant complains that the trial court erred in admitting both of his extrajudicial statements in violation of Tex.Code Crim.Proc.Ann., art. 38.22, sec. 2(b).[4] Basically, appellant argues that neither of his statements affirmatively and facially show that he knowingly, intelligently and voluntarily waived the rights contained in article 38.22, section 2(a).[5] Appellant concedes that the caselaw is against him on this issue, *see e.g., Cannon v. State,* 691 S.W.2d 664, 674 (Tex.Crim.App.1985), but urges this court to reconsider the underpinnings of that caselaw.

### Applicable Law

▆▆ This was recently done, more or less, by our Court of Criminal Appeals in *Garcia v. State,* 919 S.W.2d 370 (Tex.Crim. App.1996) (Opinion on State's Motion for Rehearing). On original submission, the Court of Criminal Appeals held that the warnings contained in section 2(a) had to be waived individually and facially on a defendant's statement in order to comply with section 2(b). *Garcia,* 919 S.W.2d at 379. This holding would have supported appellant's claim. However, on rehearing, that court reversed itself, and implicitly, at least, re-approved the notion of substantial compliance that it had sanctioned in *Cannon. Garcia,* 919 S.W.2d at 387. As we understand the opinion in *Garcia,* the presence of a valid waiver of the rights contained in section 2(a) can be ascertained from considering the totality of an accused's statement, and the waiver (required by section 2(b)) is sufficient if it substantially complies with section 2(b).[6]

---

2. Alfonso Chapa, Chief Justice (retired) not participating.

3. The State apparently abandoned pursuit of the death penalty.

4. No written statement made by the accused as a result of custodial interrogations is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that: ... (b) "the accused, prior to and during the making of the statement, knowingly, intelligently and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section." Article 38.22, section 2(b).

5. The rights contained in section 2)(a) are that: 1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; 3) he has the right to have a lawyer present to advise him prior to and during any questioning; 4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and 5) he has the right to terminate the interview at any time.

6. The court of criminal appeals noted that the better practice (to effectuate compliance under section 2(b)) would be to insert the following language adjacent to an accused's signature on his statement: "I knowingly, voluntarily and in-

### Application of Law to Facts

■ In the instant case, we note that the record of the pre-trial motion to suppress hearing shows that prior to making his extra-judicial statements, appellant separately received *Miranda* warnings from police that were read from a card. Additionally the preamble to appellant's statements contained the admonitions required by section 2(a). And finally, at the conclusion of appellant's second statement (the only statement containing any inculpatory material at all), and immediately preceding appellant's signature, appeared the following language:

"THIS STATEMENT HAS BEEN READ BACK TO ME BY DETECTIVE IMELDA RODRIGUEZ AND I FIND IT TO BE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. I HAVE GIVEN THIS STATEMENT OF MY OWN FREE WILL. I HAVE NOT BEEN FORCED INTO GIVING THIS STATEMENT NOR HAVE I BEEN PROMISED ANYTHING FOR MAKING THIS STATEMENT. END OF STATEMENT."

In pertinent part, this statement is similar to the statement appended to the defendant's statement in *Garcia*, viz: "I further certify that I have made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement." *Garcia*, 919 S.W.2d at 378–79. We find in the instant case, as did the court of criminal appeals in *Garcia*, that there was substantial compliance with article 38.22, section 2(b). Appellant's first point of error is overruled.

In his second point of error, appellant claims the trial court erred in allowing appellant's extrajudicial statements into evidence because appellant had "reserved his rights" after the *Miranda* warnings were read to him. Appellant argues that since he "reserved his rights," the State has not met its heavy burden of showing that the subsequent

statements given by appellant were knowingly, intelligently and voluntarily given, *citing Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); and *Nehman v. State*, 721 S.W.2d 319 (Tex.Crim.App.1986).

### Applicable Law–Standard of Review

■ At a suppression hearing, the trial judge is the sole trier and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App.1996). The court of appeals is to limit its review of the trial court's rulings, both as to the facts and the legal significance of those facts, to a determination of whether the trial court abused its discretion. *Id.* Even if the court of appeals would have reached a different result, as long as the trial court's rulings are at least within the "zone of reasonable disagreement," the appellate court should not intercede. *Id.* at 496–97. We should reverse a trial court for an abuse of discretion; i.e., when it appears the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the current law and the facts viewed in a light most favorable to its legal conclusion. *Id.* at 497–498.

### Application of Law to Facts

■ The trial court made findings of fact and conclusions of law with regard to appellant's statements. The trial judge found that the appellant's testimony at the suppression hearing concerning his request for an attorney was not credible. He found that police testimony, that appellant never invoked his right to counsel, was credible. The only reference in the record that is remotely supportive of appellant's claim is a non-responsive answer given by Officer Treviño at the suppression hearing, that "he reserved his rights." There is no reference to who the "he" is, nor is there any further reference to

telligently waived the rights described above before and during the making of this statement."

*Garcia*, 919 S.W.2d at 387.

the "reservation of rights."[7] Treviño, when specifically asked whether appellant invoked his right to counsel, replied "No." Further, Treviño did not indicate that appellant ever invoked any of his other constitutional or statutory rights, during the arrest and search process at appellant's residence. Viewed in a light most favorable to the trial court's legal and factual conclusions, the record demonstrates a virtual "swearing match" between police and appellant. It appears that the trial court's findings of the historical facts are supported by the record and that he applied the correct standard of law to those historical facts. *See DuBose*, 915 S.W.2d at 497. Appellant's second point of error is overruled.

In his third point of error, appellant complains that the trial court erroneously failed to charge the jury in conjunction with the holding in *Edwards v. Arizona*. Specifically, at the charge conference, out of the jury's presence, appellant dictated into the record the following requested instruction:

If you find the defendant asked for an attorney, voluntary interrogation should have stopped and no further questioning of the defendant should have taken place unless initiated by the defendant. If you find the defendant did not initiate the questioning that led to either Statement 1 or 2, or both, then each such statement is deemed voluntarily and should not be considered by you for any purpose.

The trial court refused to give appellant's requested instruction. Instead, the trial court fully charged the jury on all the law contained in article 38.22, section 2(a) and (b), concluding the charge by instructing the jury, that if they found a violation of either (a) or (b), or had a reasonable doubt thereof, then they should "disregard such statement and not consider it for any purpose whatsoever and draw no inference nor conclusion therefrom and not consider any evidence obtained as a result thereof."

**Applicable Law**

Art. 38.22, sec. 6 provides, inter alia:

Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof.

Article 38.22, section 7 provides: "When the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement."

■ The law does not contemplate submission to a jury of any and every dispute as to the mechanical or technical requisites of article 38.22, section 2, *White v. State*, 779 S.W.2d 809, 827 (Tex.Crim.App.1989). A defendant is entitled to submission of the general issue of whether he was adequately warned, as that issue relates to the validity of his waiver of rights. *Id.; See also Penry v. State*, 903 S.W.2d 715, 748 (Tex.Crim.App. 1995).

**Application of Law to Facts**

■ The trial court in the instant case properly charged the jury on the issues contained in article 38.22, section 2(a) and (b), in accordance with section 6, and section 7. The trial court gave the *general* instructions required by law, and anything in the nature of appellant's requested instruction would have constituted a comment on a particular facet of the evidence. *See generally White* and *Penry*. Appellant's third point of error is overruled.

In point of error four appellant claims that the trial court erred in permitting a large number of uniformed police officers to sit in the courtroom during appellant's trial. The record shows that after the trial court conducted voir dire, and prior to the giving of

7. It should be further noted that Treviño was only involved in the arrest of and search of appellant and his residence, at the appellant's residence. He was never involved in any interrogation of appellant at the police station, nor was he present when appellant gave his two statements.

opening statements, appellant objected to some police officers sitting in the courtroom. The trial court indicated that he would deal with the "problem" if it arose during the trial. During the state's case-in-chief, appellant requested a mistrial on the same grounds. The trial court noted on the record that there were ten to twenty unarmed police cadets in the courtroom, but refused to order the cadets out of the courtroom nor grant a mistrial. The trial court did instruct the jury that the cadets were a graduating group observing courtroom procedure and that "they have nothing to do with this case." Appellant claims that the atmosphere caused by the appearance of uniformed officers en masse at a capital murder trial could have seriously prejudiced the jury against appellant, *citing Powell v. State,* 897 S.W.2d 307, 318, n. 7 (Tex.Crim.App.1994) [8], *cert. denied,* —— U.S. ——, 116 S.Ct. 54, 133 L.Ed.2d 19 (1995).

### Applicable Law

 The Fourteenth Amendment incorporates the essence of the Sixth Amendment right to be tried by impartial, indifferent jurors whose verdict must be based upon the evidence developed at trial. *Holbrook v. Flynn,* 475 U.S. 560, 570, 106 S.Ct. 1340, 1346, 89 L.Ed.2d 525 (1986). A defendant, to prevail on an appeal claiming reversible prejudice resulting from external juror influence, must show either actual or inherent prejudice. To determine inherent prejudice, we look to whether "an unacceptable risk is presented of impermissible factors coming into play." *Id.; Holbrook v. Flynn,* 475 U.S. at 570, 106 S.Ct. at 1346–47 (*citing Estelle v. Williams,* 425 U.S. 501, 505, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976)). The court of criminal appeals has held that spectator conduct or expression which impeded normal trial proceedings would not result in reversible error unless a defendant showed a reasonable probability that the conduct or expression interfered with the jury's verdict. *Landry v. State,* 706 S.W.2d 105, 112 (Tex.

Crim.App.1985). The federal and state rule, then, are essentially the same. *Howard v. State,* 941 S.W.2d 102, 117 (Tex.Crim.App. 1996).

### Application of Law to Facts

 In the instant case, the spectating cadets were unarmed and remained in the courtroom for an undetermined period of time. The instant case, while a capital murder case, did not involve a police officer victim, but rather two civilians. The trial court instructed the jury concerning the identity of the cadets, and told them that the cadets had no connection to the case. The jury was told that the cadets were simply observing courtroom procedure. We find that there is no reasonable probability that the cadet's presence in the courtroom interfered with the jury's verdict. *See generally, Landry,* 706 S.W.2d at 105; *Howard.* Appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.

---

**8.** This reference in *Powell* was nothing more than a few exorcised judges lamenting, in pure dicta, about what they perceived to be a lynch-mob atmosphere orchestrated by the State to prejudice the jury. Nothing in this n. 7 in *Powell*

is remotely related to the rationale employed by that court in its vacation of the court's judgment. The holding in *Powell* is wholly inapplicable to the instant case.