TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00357-CR







Derrick Caldwell, Appellant




v.




The State of Texas, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0980582, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING








 Appellant Derrick Caldwell was convicted in a jury trial of the offenses of assault
on a public servant and aggravated assault with a deadly weapon. See Tex. Penal Code Ann.
§§ 22.01(a)(1), (b)(1); 22.02(a)(2) (West 1994 & Supp. 1999). The trial court assessed appellant's
punishment for assault upon a public servant, enhanced by a prior felony conviction, at
imprisonment for sixteen years, and for aggravated assault with a deadly weapon, enhanced by a
prior felony conviction, at imprisonment for eight years. On appeal, in eleven points of error,
appellant asserts that the evidence is legally and factually insufficient, and that the trial court erred
in charging the jury, in allowing an improper amendment of the indictment, and in granting the
State's challenge of a juror for cause. We will overrule appellant's points of error and affirm the
trial court's judgment.


LEGAL SUFFICIENCY OF EVIDENCE


 In his first and second points of error, appellant claims the evidence is legally
insufficient to support a deadly weapon finding as to Count II, and therefore, the evidence will not
sustain his conviction for aggravated assault. It was alleged that appellant by using a motor
vehicle as a deadly weapon committed an aggravated assault upon Robert Jones. "'Deadly
weapon' means:  (A) a firearm or anything manifestly designed, made, or adapted for the purpose
of inflicting death or serious bodily injury; or (B) anything that in its manner of its use or intended
use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(A),
(B) (West 1994). Unlike a firearm, a motor vehicle is not a deadly weapon per se, because a
motor vehicle is not manifestly designed, made, or adapted for the purpose of inflicting death or
serious bodily injury. See Roberts v. State, 766 S.W.2d 578, 579 (Tex. App.--Austin 1989, no
pet.). Nevertheless, by the manner of its use or intended use, a motor vehicle is capable of
causing death or serious bodily injury and may be a deadly weapon. See Walker v. State, 897
S.W.2d 812, 813-14 (Tex. Crim. App. 1995); Tyra v. State, 897 S.W.2d 796, 798 (Tex. Crim.
App. 1995); Ex parte McKithan, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992); Ray v. State, 880
S.W.2d 795, 796 (Tex. App.--Houston [1st Dist.] 1994, no pet.). "[T]he 'capability' must be
evaluated in light of what did happen rather than the conjecture about what might have happened
if the facts had been different than they were." Williams v. State, 946 S.W.2d 432, 435 (Tex.
App.--Fort Worth 1997), pet. dism'd improvidently granted, 970 S.W.2d 566 (Tex. Crim. App.
1998). The intent to use a motor vehicle as a weapon need not be shown. See Walker, 897
S.W.2d at 814.

 In reviewing the legal sufficiency of the evidence, the test is whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443
U.S. 307, 319 (1979); Staley v. State, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994); Geesa v.
State, 820 S.W.2d 154, 156 (Tex. Crim. App. 1991); Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988). The only element of the offense challenged by appellant is that the
evidence is legally insufficient to show that the motor vehicle was used as a deadly weapon.

 The evidence viewed in the light most favorable to the verdict follows: At about
2:00 p.m. on September 30, 1997, City of Austin Police Officer Robert Jones was on patrol in
East Austin. He was in uniform driving a marked patrol car. Officer Jones stopped for a stop
light at the intersection of Manor Road and Airport Boulevard; he noticed a car driven by
appellant stopped at the same light. Appellant's car "hung back" from the red light, and Officer
Jones noticed that neither appellant nor the male front seat passenger were wearing seat belts. 
Officer Jones activated his overhead lights and appellant stopped his car in a nearby convenience
store parking lot.

 As Jones approached appellant's car, he noticed that the trunk had been opened, and
appellant was exiting his vehicle. For safety reasons, Jones directed appellant to stay in his
vehicle and asked for his driver's license and proof of insurance. Appellant responded that he did
not have a driver's license, but he had "something to show [Jones] in the trunk." Appellant then
said he had his driver's license in the trunk, but Jones told appellant to stay in the car and not go
back to the trunk. Appellant ignored Jones's directives and pushed past the officer stating he was
going to the trunk. Because appellant would not comply with his orders and had no identification,
Jones told appellant to place his hands on his vehicle so that he could place him in custody. Jones
was concerned for his safety as he thought there might be a weapon in the trunk "or something
wasn't right because of the way [appellant] was acting." Jones then attempted to handcuff
appellant.

 Jones grabbed appellant's left hand to cuff him and told appellant he was under
arrest. Appellant spun around and pushed Jones in the chest with both hands. Jones fell back a
few feet, and appellant ran, but Jones quickly caught him about 15 feet away. Jones grabbed
appellant and pulled him to the ground. However, appellant landed on top of Jones who now had
his left hand pinned under appellant's right knee and the handcuffs in his right hand. In an effort
to get appellant off of him and to get control of the situation, Jones hit appellant in the head with
the handcuffs and tried to buck him off. Jones's efforts were unsuccessful, and appellant reached
for Jones's weapon, causing Jones to discard the handcuffs to protect his weapon. With his left
hand pinned under appellant and his right hand protecting his weapon, Jones was unable to protect
his face, and appellant began hitting him in the face with his fist. Appellant hit Jones several
times, and about the fifth or sixth time, Jones felt his left eye "pop" and he could no longer see
out of it. While hitting Jones, appellant said that he was not going back to jail over a seatbelt. 
Appellant reached for Jones's weapon several times, but because of the safety features of the
weapon, appellant was unable to get it out of the holster. Appellant also struggled with Jones over
the radio on his uniform as Jones tried to activate the emergency button. Appellant seemed to
know what Jones was attempting to do with the radio; appellant took the radio and threw it aside.

 As appellant and Jones continued to struggle, Jones noticed the right front passenger
approaching them and he ordered him to stay back. The passenger initially complied with the
order, but appellant pleaded with him for help to "get this guy" so the passenger picked up the
handcuffs and gave them to appellant. Appellant attempted to handcuff Jones, but he was
unsuccessful because Jones was able to free his hand. When he could not handcuff the officer,
appellant threw the handcuffs aside. Appellant tried to get up, but Jones grabbed him by his
necklaces, twisting them to choke appellant and bring him under control, but the chains broke. 
Jones tried to pull appellant to the ground by grabbing his legs, but appellant broke free and ran
for his vehicle.

 Jones chased appellant to his car and to prevent him from leaving the scene
attempted to take the keys from the ignition. Jones reached through the open door to get the keys,
but appellant shut the door on his arm as he put the car in gear, and Jones was unable to get the
keys. At this point, Jones's hand was only a few inches from appellant and his body "a couple
of feet" from him, so appellant could see Jones. The vehicle was not yet moving when Jones got
to it. Jones was also unable to remove his arm from appellant's vehicle as it was well secured by
the vehicle door. Jones banged on the window with his free hand and told appellant to stop and
open the door, but appellant "peeled out at a high rate of speed." Appellant's vehicle left tire
marks on the parking lot. Jones was afraid he was going to die. Jones was dragged sideways by
the car about 80 feet before the door opened sufficiently for him to get free. He was dragged
"sideways" because the speed of appellant's vehicle caused him to "lose his feet" and,
consequently, he was dragged at an angle. Jones thought he was going to die at this point because
he did not know if appellant was going to stop and he knew from other high speed collisions that
he needed to get free. Although this offense occurred in broad daylight and other persons were
present, no one attempted to assist Officer Jones until he fell from appellant's vehicle and was
unable to get back up.

 As a result of being dragged by appellant's vehicle and falling to the ground, Jones
suffered a broken hand. The bone in his finger was sliced down the middle at an angle and split
in two. Jones underwent surgery to have the finger put back together with screws. He also went
through therapy to regain the mobility in his hand because he could not close it for a long time. 
At the time of trial, his hand was still not back to normal.

 Jones also testified that in his experience as an accident investigator for the City of
Austin he had seen cars used in a manner in which they became deadly weapons. Based on his
experience as a police officer and as an accident investigator, Jones testified that, in his opinion,
his legs could have been severely injured, possibly to the extent of losing them or he could have
been killed if his legs had gone underneath appellant's car.

 We conclude that when the evidence is viewed in the light most favorable to the
jury's verdict, a rational trier of fact could find beyond a reasonable doubt that because of the
manner of appellant's use of his motor vehicle it was capable of causing death or serious bodily
injury. Therefore, the jury's verdict finding that the motor vehicle was a deadly weapon is
supported by legally sufficient evidence. Appellant's first two points of error are overruled.


FACTUAL SUFFICIENCY OF EVIDENCE


 In his third and fourth points of error, appellant urges that the evidence is factually
insufficient to support the use of a deadly weapon finding as to Count II. Therefore, the evidence
would be insufficient to sustain the jury's verdict of appellant's guilt of aggravated assault. In
reviewing the factual sufficiency of the evidence, we view all of the evidence "without the prism
of the light most favorable to the prosecution." See Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd
untimely filed). In performing a factual sufficiency review, appellate courts are required to give
deference to the jury's verdict and to examine all of the evidence impartially, setting aside the
jury's verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust." Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997) (quoting Clewis,
922 S.W.2d at 129). We will summarize the additional evidence that we are required to consider
in determining factual sufficiency.

 Mr. O.T. Garcia worked at a tire store across Airport Boulevard from the scene
of the incident. When he saw appellant on top of the officer and assaulting him, Garcia attempted
to cross Airport Boulevard to assist the officer, but he was prevented from doing so because of
the traffic. He stated that appellant's door was shut and his car was pulling away when Officer
Jones got to it. The officer had a flashlight in his right hand and appeared to be reaching into
appellant's vehicle with both hands as it pulled away. Garcia testified the officer was holding on
to appellant's car and his left arm did not appear to be caught in the door.

 Mohammed Yanez was the proprietor of the convenience store where Jones
originally stopped appellant's vehicle. Yanez testified that appellant's door was closed when Jones
first approached it and that Jones ordered appellant out of the vehicle. After the fight on the
ground, Yanez observed appellant's escape. Like Garcia, Yanez testified that appellant's door was
closed and his vehicle moving by the time the officer got to it. The driver's window was open. 
The officer grabbed the driver's door and was hanging onto the car. He fell off after about twenty 
feet.

 The written statement of Diana Hernandez was admitted in evidence. Hernandez
was a customer in Yanez's store at the time of the incident. She likewise stated that appellant's
car was already moving when Jones grabbed onto it. He fell off after twenty to thirty feet.

 All three of appellant's passengers at the time of the incident testified. Johnue
Kingston was appellant's front seat passenger. He was in custody under a complaint for this 
September 30, 1997 assault on Officer Jones at the time of his testimony. He testified with use
immunity. Kingston remembered the traffic stop and the driver being ordered to get out of the
car. He admitted that he picked up the handcuffs but, after Officer Jones threatened to arrest him,
he claimed he dropped the handcuffs and got back in the car. Kingston testified that, when
appellant fled, the driver's door was open as the car pulled away, then it became closed, when
Jones got to the [moving] vehicle he opened the door himself. Kingston testified that Jones swung
his flashlight inside the car before he grabbed onto the door. He added that appellant did not close
the door on the officer's arm. He said the officer held onto the door for fifteen to twenty feet
before he fell off.

 Aqueelah Abdullah and Muneerah Abdullah were two sisters who accepted a ride
from appellant and Kingston before the confrontation with Officer Jones. Both testified that
appellant initially remained in the car after the traffic stop. They testified that appellant did not
try to get out of the car until he was told to do so. Muneerah also remembered that appellant
asked to get his driver's license out of the trunk. Both girls got out of the car and took a bus to
the mall as soon as the trouble started.

 In this case, as in many cases, the witnesses' testimony was not entirely consistent. 
However, after examining all of the evidence impartially and giving deference to the jury's
verdict, we conclude that the jury's verdict is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong or unjust. We hold that the evidence is factually sufficient to
support the jury's verdict and overrule appellant's third and fourth points of error.


ALLEGED CHARGE ERROR


 In his fifth point of error, appellant complains that the trial court "erred in charging
the jury on the enhancement paragraph with regard to Count II." Basic to appellant's charge error
complaint is the manner in which the enhancement paragraph was alleged in the indictment. 
Appellant argues that the enhancement paragraph allegation did not give him notice that it would
be applied to Count II. Three counts were alleged; count one was abandoned; following Count
III the State alleged:


Paragraph I



And the Grand Jury further presents that previously Derrick Caldwell had been
convicted of the felony offense of Aggravated Assault, on October 2, 1991, in
cause number K-67859 in the Judicial District Court of Johnson County, Kansas,
which conviction had become final before the commission of the offense alleged in
the preceding paragraphs or counts, against the peace and dignity of the State.



 Appellant says that "paragraph I" which follows "Count III" is a part of Count III
and not a part of Count II. He cites article 21.24 of the Code of Criminal Procedure which he
says "makes it very clear that paragraphs are included within counts."


Art. 21.24. Joinder of certain offenses



(a) Two or more offenses may be joined in a single indictment, information, or
complaint, with each offense stated in a separate count, if the offenses arise
out of the same criminal episode, as defined in Chapter 3 of the Penal Code.


(b) A count may contain as many separate paragraphs charging the same offense
as necessary, but no paragraph may charge more than one offense.


(c) A count is sufficient if any one of its paragraphs is sufficient. An indictment,
information, or complaint is sufficient if any one of its counts is sufficient.



Tex. Code Crim. Proc. Ann. art. 21.24 (West 1989). Article 21.24 is concerned with the joinder
of two or more offenses and with alleging more than one means of committing the offense. A
paragraph alleging a prior conviction is not a paragraph "charging the same offense." Article
21.24 does not apply to enhancement of punishment allegations. "The only purpose of the
enhancement paragraph is to provide the accused with notice that the State will attempt to use a
specific conviction for enhancement of punishment." Brooks v. State, 957 S.W.2d 30, 31 (Tex.
Crim. App. 1997); Coleman v. State, 577 S.W.2d 486, 488 (Tex. Crim. App. 1979). Even
though plead apart from the indictment, notice of the use of a prior conviction for enhancement
purposes may be proper. See Brooks, 957 S.W.2d at 32. We hold that the enhancement
paragraph in this indictment applied to the "preceding . . . counts," Counts II and III. The
enhancement paragraph gave appellant notice that it applied to both Counts II and III. The trial
court did not err in applying the enhanced punishment allegation in charging the jury on Count II
of the indictment. Appellant's fifth point of error is overruled.


SUFFICIENCY OF PROOF OF PRIOR CONVICTION


 In points of error six and seven, appellant asserts that "the evidence was insufficient
to link [him] with the prior felony conviction" alleged to enhance his punishment. Therefore, he
argues the trial court erred in allowing the jury to consider the enhanced range of punishment
based on the alleged prior felony conviction. At the punishment phase of trial, appellant pled "not
true" to the enhancement paragraph that alleged he had been convicted in the State of Kansas for
the felony offense of aggravated assault. The trial court admitted evidence offered by the State
to prove the enhancement paragraph.

 Appellant stated he had no objection when the State offered exhibits 25 and 26. 
Exhibit 25 was appellant's fingerprints made by an expert on the day of trial. Exhibit 26 was a
"Business Records Affidavit" made by the custodian of records of the Kansas Department of
Corrections. The custodian of the records certified that the three pages attached to his affidavit
were business records of the Kansas Department of Corrections. The attached pages included
fingerprints and photographs of Derrick Caldwell who had been committed to serve a term in the
Kansas Department of Corrections. The expert witness testified that he took appellant's
fingerprints on the day of trial and that they matched the fingerprints on exhibit 26. This proved
that appellant had served a sentence in the Kansas Department of Corrections. Does the record
show that appellant who served the sentence in the Kansas prison was the same person convicted
of aggravated assault in Johnson County, Kansas?

 To prove its allegation that appellant had been convicted of the felony offense of
aggravated assault in Kansas, the State offered exhibit 27. Exhibit 27 was a packet of documents
certified to be true and correct by the Clerk of the District Court of Johnson County, Kansas. 
Each page in the packet of documents was stamped with a notation that: "Because this Court file
contains insufficient personal identifiers, the Clerk of the Johnson County District Court cannot
guarantee in any manner that this material concerns the individual in whom you are interested."

 At trial, appellant objected to the admission of exhibit 27 because in that exhibit
there were no fingerprints and no photographs to connect it to those in exhibits 25 and 26 and the
cause number on the papers in exhibit 27 did not appear in exhibits 25 and 26. Appellant,
therefore, contended exhibit 27 was not admissible to show that appellant had been convicted in
Johnson County.

 The prosecutor stated to the trial court that exhibit 27 would be connected to
exhibits 25 and 26 and to the appellant by "multiple connectors." At the court's request the
prosecutor enumerated the corresponding connectors between exhibit 27 and 26 as: identity of
name, conviction for the same offense, commission of the offense on the same day, the transfer
of the prisoner from Johnson County to the Department of Corrections on the same day, and
appellant's inmate number.

 Usually fingerprints found in properly authenticated records that match a
defendant's known fingerprints identify the defendant as the same person convicted of the prior
offense alleged for enhancement purposes. See Beck v. State, 719 S.W.2d 205, 209 (Tex. Crim.
App. 1986); Rosales v. State, 867 S.W.2d 70, 72-73 (Tex. App.--El Paso 1993, no pet.). 
However, fingerprints and photographs are not the exclusive means for identifying a defendant as
the same person convicted of the prior alleged offense. See Littles v. State, 726 S.W.2d 26, 30-32
(Tex. Crim. App. 1984); Beck, 719 S.W.2d at 209; Gollin v. State, 554 S.W.2d 683, 685-87
(Tex. Crim. App. 1977); Cain v. State, 468 S.W.2d 856 (Tex. Crim. App. 1971). In proving
prior convictions, identity often includes the use of a combination of identifiers. See Littles, 726
S.W.2d at 30-32; Beck, 719 S.W.2d at 209; Gollin, 554 S.W.2d at 685-87. "Each case is to be
judged on is own individual merits. . . . the proof, though unorthodox, was clearly sufficient." 
Littles, 726 S.W.2d at 32.

 In this case personal identifiers common to exhibits 26 and 27 do not include
fingerprints, photographs, or an offense cause number. However, identifiers common to exhibits
26 and 27 are:  (1) identity of names--Derrick L. Caldwell, (2) conviction for the same
offense--two counts of aggravated assault, a class D felony, (3) the day of the commission of the
offense is the same--May 21, 1991, (4) the same punishment from 4 to 7 years, (5) appellant was
received at the Hutchinson Kansas Correctional Facility on May 13, 1992 and a Deputy Sheriff
of Johnson County, Kansas delivered Derrick L. Caldwell to the Hutchinson Correctional Facility
on that same day, (6) a caption under appellant's photograph and the fingerprint card in exhibit
26 show appellant's inmate number is #55241. An order appearing in Exhibit 27 shows that the
Clerk of the Johnson County mailed a copy of the order to "Mr. Derrick Caldwell, #55241,
Hutchinson Correctional Facility." 

 The corresponding identifiers common to exhibits 26 and 27 are sufficient to
identify appellant as the same Derrick L. Caldwell who was convicted in Johnson County, Kansas
of the offense alleged for enhancement in this case. Exhibit 27 was properly admitted in evidence. 
The evidence supports the court's jury charge at the punishment phase of trial allowing the jury
to consider the enhanced range of punishment. Appellant's sixth and seventh points of error are
overruled.

 In his eighth point of error, appellant declares that the evidence is insufficient to
prove the prior Kansas conviction alleged for enhancement because it does not contain a judgment
or sentence conforming to Texas or Kansas law. Appellant made no trial objection comporting
with his complaint made in this point of error. Therefore, the claimed error was not preserved
for appellate review. See Camacho v. State, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993);
Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). However, exhibit 27 includes a
"Journal Entry of Plea" showing that appellant entered a guilty plea to two counts of the alleged
offense of aggravated assault, class D felonies and that "the court, after determining that the plea
was freely and voluntarily made with the understanding of the nature of the charges and the
consequences of the plea and that there is a factual basis for the plea, adjudges the defendant guilty
as charged of the offense of aggravated assault as that offense is defined and classified in K.S.A.
21-3410 as a class D felony in Counts I and II." Exhibit 27 also includes a "Journal Entry of
Sentencing" showing that "It is further by the court ordered that the minimum terms provided for
in Counts I and II shall be deemed to run consecutively to each other while the maximum terms
provided for in Counts I and II shall be deemed to run concurrently. The Court intends the
controlling sentence to be four to seven years."

 During trial defense counsel referred to the "judgment" and "sentence" contained
in Exhibit 27. These journal entries contain all of the information necessary and, under Texas
law, are the functional equivalent of a copy of a judgment and sentence. See Mitchell v. State, 848
S.W.2d 917, 918 (Tex. App.--Texarkana 1993, pet. ref'd). We hold the evidence is sufficient
to prove the prior Kansas conviction alleged for enhancement. Appellant's eighth point of error
is overruled.


DENIAL OF REQUESTED JURY CHARGE


 In his ninth point of error, appellant contends that:  "The court erred in denying
defendant's request for an instruction under § 6.01(c), Penal Code." The Penal Code provides:


§ 6.01. Requirement of Voluntary Act or Omission


(a) A person commits an offense only if he voluntarily engages in conduct,
including an act, an omission, or possession.


(b) Possession is . . .


(c) A person who omits to perform an act does not commit an offense unless a law
as defined by Section 1.07 provides that the omission is an offense or
otherwise provides that he has a duty to perform the act.



Tex. Penal Code Ann. § 6.01 (West 1994). Appellant urges that his request for the Section
6.01(c) jury charge was raised by evidence that he did not stop his car after the officer jumped on
it and that he did not open his car door in time to prevent the officer from being dragged by the
car.

 Appellant adroitly characterizes the failure to stop and the failure to open the car
door as omissions to act. The failure to stop and the failure to open the car door may also be
characterized not as omissions but as affirmative acts. Section 6.01(c) provides that an accused
is criminally accountable for an omission to act only when (1) a statute provides that an omission
is an offense, or (2) a statute otherwise prescribes a duty to act, and a subsequent failure to act
pursuant to that duty is an offense. See Billingslea v. State, 780 S.W.2d 271, 274 (Tex. Crim.
App. 1989); Florio v. State, 784 S.W.2d 415, 416-17 (Tex. Crim. App. 1990).

 Both Counts II and III charged appellant with affirmative acts resulting in the
commission of criminal offenses. Neither count charged appellant with committing an offense by
omission. The aggravated assault statute does not make the omission of an act an offense nor does
it place an affirmative duty to act on an individual. Appellant has cited no case, and we know of
none, where a trial court's failure to give an instruction such as appellant requested was found to
be error. See Cruz v. State, 820 S.W.2d 41, 43 (Tex. App.--Austin 1991, pet. ref'd). The jury
charge included a Section 6.01(a) instruction and a causation instruction. See Tex. Penal Code
Ann. § 6.04 (West 1994). These instructions adequately protected appellant's rights. Point of
error nine is overruled.


ALLEGED AMENDMENT OF INDICTMENT


 In point of error number ten, appellant claims that the trial court erred in allowing
a last minute amendment of Count II over his objection. After jury selection and before any
evidence was admitted, the State moved the trial court to allow it to abandon one of the alleged
means for the commission of the offense alleged in Count II. Over objection the court granted the
State's motion and in the jury charge the court, in tracking the allegations of the indictment,
omitted the words "closing a motor vehicle door on Robert Jones's hand." By his objection
appellant contended that this abandonment was in reality an improper and untimely amendment
of the indictment. The Court of Criminal Appeals has recently held that:


Because the defendant is already on notice of all the alleged means for the
commission of the offense, the abandonment of an alternative means does not affect
the defendant's notice or his ability to prepare his defense to the allegations in the
charging instrument.


* * * *



[T]he charging instrument may be altered to delete language which is not
descriptive of what is legally essential to the validity of the indictment.



Eastep v. State, 941 S.W.2d 130, 134 (Tex. Crim. App. 1997); see also Flowers v. State, 815
S.W.2d 727, 727-29 (Tex. Crim. App. 1991). Eastep controls our decision. We cannot agree
with appellant's earnest appellate argument that Eastep should be distinguished from the instant
case because the "abandonment/amendment violates Article 28.10(c)" of the Code of Criminal
Procedure. Here the abandonment, while it should have been more timely requested, was an
abandonment of an alternative means for the commission of the offense and was also surplusage. 
The trial court did not err in allowing the State to abandon the allegation. Appellant's tenth point
of error is overruled.


CHALLENGE OF JUROR FOR CHARGE


 In his eleventh point of error, appellant insists that the trial court "erred in granting
the State's challenge for cause of venire member Ewing." After the voir dire of the panel, several
members of the venire were questioned individually at the bench before the court. Venire member
Ewing stated that because of a previous "bad experience" he had while serving on a jury, he had
"jaded feelings" and would find it difficult to sit again in judgment of someone else. For this
reason Ewing did not want to serve on this jury. Appellant's trial counsel stated: "I don't think
that's sufficient, judge. A lot of people don't want to be on a jury." Ewing also responded that
he would have difficulty in following a law that provided a higher range of punishment for assaults
on police officers than assaults on other individuals.

 A venire member who has a bias or prejudice against any phase of the law upon
which the State is entitled to rely for conviction or punishment is subject to challenge for cause. 
See Tex. Code Crim. Proc. Ann. art. 35.16(b)3 (West Supp. 1999). The trial court granted the
State's challenge for cause. Appellant made no objection to the court's excusing Ewing for cause
on grounds that he could not follow the applicable law. The State urges that because appellant did
not make a trial objection and get an adverse ruling from the court when the court granted the
State's challenge, the alleged error was not preserved for appellate review. We agree. 
Appellant's failure to object to the excusal of Ewing waived the alleged error. See Butler v. State,
872 S.W.2d 227, 235 (Tex. Crim. App. 1994); May v. State, 738 S.W.2d 261, 269 (Tex. Crim.
App. 1987). Moreover, to preserve error for appellate review a defendant must receive an adverse
ruling on his objection. See Powell v. State, 897 S.W.2d 307, 310 (Tex. Crim. App. 1994);
Ramirez v. State, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991). Appellant failed to preserve the
alleged error for appellate review. Point of error eleven is overruled.


 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices B. A. Smith, Yeakel and Dally*

Affirmed

Filed: June 17, 1999

Do Not Publish





















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).



>

Eastep v. State, 941 S.W.2d 130, 134 (Tex. Crim. App. 1997); see also Flowers v. State, 815
S.W.2d 727, 727-29 (Tex. Crim. App. 1991). Eastep controls our decision. We cannot agree
with appellant's earnest appellate argument that Eastep should be distinguished from the instant
case because the "abandonment/amendment violates Article 28.10(c)" of the Code of Criminal
Procedure. Here the abandonment, while it should have been more timely requested, was an
abandonment of an alternative means for the commission of the offense and was also surplusage. 
The trial court did not err in allowing the State to abandon the allegation. Appellant's tenth point
of error is overruled.


CHALLENGE OF JUROR FOR CHARGE


 In his eleventh point of error, appellant insists that the trial court "erred in granting
the State's challenge for cause of venire member Ewing." After the voir dire of the panel, several
members of the venire were questioned individually at the bench before the court. Venire member
Ewing stated that because of a previous "bad experience" he had while serving on a jury, he had
"jaded feelings" and would find it difficult to sit again in judgment of someone else. For this
reason Ewing did not want to serve on this jury. Appellant's trial counsel stated: "I don't think
that's sufficient, judge. A lot of people don't want to be on a jury." Ewing also responded that
he would have difficulty in following a law that provided a higher range of punishment for assaults
on police officers than assaults on other individuals.

 A venire member who has a bias or prejudice against any phase of the law upon
which the State is entitled to rely for conviction or punishment is subject to challenge for cause. 
See Tex. Code Crim. Proc. Ann. art. 35.16(b)3 (West Supp. 1999). The trial court granted the
State's challenge for cause. Appellant made no objection to the court's excusing Ewing for cause
on grounds that he could not follow the applicable law. The State urges that because appellant did
not make a trial objection and get an adverse ruling from the court when the court granted the
State's challenge, the alleged error was not preserved for appellate review. We agree. 
Appellant's failure to object to the excusal of Ewing waived the alleged error. See Butler v. State,
872 S.W.2d 227, 235 (Tex. Crim. App. 1994); May v. State, 738 S.W.2d 261, 269 (Tex. Crim.
App. 1987). Moreover, to preserve error for appellate review a defendant must receive an adverse
ruling on his objection. See Powell v. State, 897 S.W.2d 307, 310 (Tex. Crim. App. 1994);
Ramirez v. State, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991). Appellant failed to preserve the
alleged error for appellate review. Point of error eleven is overruled.


 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices B. A. Smith, Yeakel and Dally*

Affirmed

Filed: June 17, 1999

Do Not Publish